**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| DEVIN COPELAND p/k/a DE RICO and MAREIO OVERTON,<br><br>        Plaintiffs,<br><br>v.<br><br>JUSTIN BIEBER, USHER RAYMOND IV p/k/a "USHER," HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, JONATHAN YIP, Individually and d/b/a PRODUCTS OF THE STREET, JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL MUSIC CORP., SONY/ATV MUSICAL PUBLISHING, LLC, BIEBER TIME PUBLISHING, LLC, WB MUSIC CORP., THE ISLAND DEF JAM MUSIC GROUP, STAGE THREE MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC AND JONETTA PATTON,<br><br>        Defendants. | Civil Action No. 2:13-cv-246 AWA/TEM |

**REPLY IN SUPPORT OF DEFENDANTS JUSTIN BIEBER AND BIEBER TIME
PUBLISHING, LLC'S RULE 12(b)(2) AND 12(B)(3) MOTION TO DISMISS
COMPLAINT FOR LACK OF JURISDICTION AND IMPROPER VENUE**

## I.    INTRODUCTION

Plaintiffs Devin Copeland and Mareio Overton ("Plaintiffs") have failed to produce

admissible evidence establishing that it is proper for this Court to exercise personal jurisdiction

over Defendants Justin Bieber ("Bieber") and Bieber Time Publishing, LLC.  Plaintiffs' central

argument is that Defendants have "ongoing contacts" with Virginia through their alleged

distribution of CDs, downloads, singles, etc. containing "Somebody to Love" in Virginia, and

their "ownership" and "maintenance" of two websites containing Bieber's name and image.  But

as will be discussed further below, Plaintiffs' speculation and assumptions about Bieber's role in

the distribution of "Somebody to Love," and the ownership and operation of the two websites are

simply wrong.  Furthermore, there is no evidence demonstrating that the Bieber Defendants

purposefully directed the sale of "Somebody to Love" to Virginia.  Case law demonstrates that

the Bieber Defendants' knowledge of national distribution of "Somebody to Love" is insufficient

to confer personal jurisdiction in Virginia.  *See Bridgeport Music, Inc. v. Still N the Water*

*Publishing*, 327 F.3d 472 (6th Cir. 2003 *cert. denied* 124 S.Ct. 399, 540 U.S. 948, 157 L.Ed.2d

279.  Accordingly, for all the reasons stated in the Motion and in this reply, this Court should

grant the Defendants' motion and dismiss Defendants from this action.[1]

## II.      THE COURT CANNOT PROPERLY EXERCISE PERSONAL JURISDICTION OVER THE BIEBER DEFENDANTS

### A.      The Court Cannot Exercise Specific Jurisdiction Over The Bieber Defendants

Specific jurisdiction can only be found when the defendant's contacts with the forum

state form the basis for the plaintiff's cause of action.  *Helicopteros Nacionales de Columbia,*

*S.A. v. Hall*, 466 U.S. 408, 414 (1984).  As discussed in the Motion, the Fourth Circuit has set

forth the following three-part test for determining whether the exercise of specific jurisdiction is

appropriate:

---

[1]  As discussed in the Motion, there are no specific jurisdictional allegations leveled against
Bieber Time Publishing, LLC, and Plaintiffs make no attempt in their Opposition to produce
evidence demonstrating that Bieber Time Publishing, LLC has contacts sufficient for Virginia to
exercise personal jurisdiction.  Thus, at minimum, Bieber Time Publishing, LLC must be
dismissed from this action.

1.      The first prong of the specific jurisdiction test requires the court analyze "the extent to which the defendant purposefully availed itself of the privilege of conducting <u>activities in the State</u>."[2] *Consulting Eng'rs*, 561 F.3d at 278 (emphasis added).

2.      "The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—<u>requires that the defendant's contacts with the forum state form the basis of the suit</u>. (Citations.)  If the plaintiff satisfies prongs one and two, prong three comes into play." *Consulting Engineers*, *supra*, 561 F.3d at 278-79 (emphasis added).

3.      "The third prong—that the exercise of personal jurisdiction be constitutionally reasonable—permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there.  Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Engineers*, *supra*, 561 F.3d at 279.

The Bieber Defendants demonstrated in their Motion that their limited contacts with Virginia were insufficient to support the exercise of either specific jurisdiction or general jurisdiction consistent with the Due Process Clause.

### 1.      Bieber's concert performance in November 2010 does not give rise to specific jurisdiction.

It is undisputed that Bieber performed "Somebody To Love" as part of a national concert tour in Norfolk, Virginia on November 13, 2010.  (Compl., ¶ 49; Bieber Decl., ¶ 4.)  But as

---

[2] "Under this prong, the court considers factors including, but not limited to, the following: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum." *Pan-American Products & Holdings, LLC v. R.T.G.*, 825 F. Supp. 2d 664, 680 (M.D.N.C. 2011) (citing *Consulting Eng'rs*, 561 F.3d at 278).

demonstrated in the Motion, Plaintiffs' Complaint demonstrates that Plaintiffs' claims do not

"arise out of" Bieber's performance of the song at a single performance in Norfolk in 2010.

Plaintiffs contend that Defendants' argument regarding the "focus or gravamen" of

Plaintiffs' claims are "not part of the test for specific jurisdiction," but Plaintiffs fail to cite any

authority showing that Defendants are improperly interpreting the Fourth Circuit's requirement

that "the plaintiff's claims <u>arise out of</u> the activities directed at the forum." *Consulting*

*Engineers*, *supra*, 561 F.3d at 278-79 (emphasis added).  Relevant definitions of the term "arise"

include "to originate from a source" or "to come into being or to attention."

http://www.merriam-webster.com/dictionary/arise; http://dictionary.reference.com ("to come

into being, action, or notice; originate; appear; spring up").

Although Plaintiffs may quarrel with the use of terms "focus" or "gravamen," it is clear

that Plaintiffs' claims did not "originate" or "come into being" from the November 2010

performance.  Instead, Plaintiffs' claims "arise out of" the alleged "conspiracy" to supposedly

"copy" Plaintiffs' song (Compl., ¶ 38) – which did not involve the Bieber Defendants – and the

subsequent recording of the allegedly "copied" song by Bieber in Los Angeles, California.

(Bieber Decl., ¶ 5.)

Moreover, the Fourth Circuit has explained that "[t]he contacts <u>related to the cause of</u>

<u>action</u> must create a <u>'substantial connection'</u> with the forum state … [and] the defendant's

actions must be directed at the forum state in more than a random, fortuitous, or attenuated way."

*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir.1997) (emphasis added).

Bieber's single performance of the song in November 2010 as part of a national tour cannot be

said to create a "substantial connection" between the Bieber Defendants and the forum state.

Even if it were assumed *arguendo* that Plaintiffs' claims could be said to "arise out of" the 2010 performance (which they do not as explained above), then jurisdiction would still not be proper over a single claim related to the 2010 performance.  Under the Copyright Act, "[e]ach act of [copyright] infringement is a distinct harm giving rise to an independent claim for relief." *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992) (emphasis added).  In *Gatekeeper Inc. v. Stratech Systems, Ltd.*, 718 F. Supp. 2d 664, 665 (E.D. Va. 2010), Judge Ellis held that "absent general jurisdiction, specific jurisdiction must be established for each alleged claim; failure to do so for any alleged claim requires nonprivileged dismissal or transfer of that claim."  (Emphasis added).  Judge Ellis noted that "[a]lthough the Fourth Circuit has yet to address this issue, the three courts of appeal that have done so have sensibly concluded that specific jurisdiction requires a claim-specific analysis, as a nonresident defendant lacking continuous and systematic contacts with the forum state could not 'reasonably anticipate being haled into court' on claims unrelated to the defendant's forum state contacts, and thus haling them into court on those unrelated claims would violate their due process rights."  *Id.* at 668-69 (emphasis added).  Thus, even if the Court believed that jurisdiction was appropriate based upon the single November 2010 concert performance, then the Court should dismiss all other claims against the Bieber Defendants, and solely adjudicate the claim related to the November 2010 performance.

Finally, the cases cited by Plaintiffs that purportedly establish that Bieber's November 2010 concert is sufficient to confer specific jurisdiction are all readily distinguishable from the instant case or support Defendants' argument that jurisdiction is improper.[3]  In *Noble Security, Inc. v. MIZ Engineering, Ltd.*, 611 F. Supp. 2d at 513, 546 (E.D. Va. 2009), cited on page 6 of the Opposition, the district court rejected asserting jurisdiction over out-of-state defendants that

---

[3] The Bieber Defendants will not address Plaintiffs' cases cited that do not involve issues of personal jurisdiction.

were parties to a licensing agreement that contained a Virginia choice of law provision, finding

that "the contacts in this case were too attenuated and insubstantial to provide a constitutionally

sufficient basis for Virginia courts to exercise either general or specific personal jurisdiction over

the Third Party Defendants."

Plaintiffs argue on page 6 that *McGee v. International Life Insurance Co.*, 355 U.S. 220,

78 S.Ct. 199, 2 L.Ed.2d 223 (1957) stands for the proposition that jurisdiction may be

appropriate based on a single act, but the case does not support this assertion.  Instead, as

explained in *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1127-28 (4th Cir.), *cert. denied*

479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986), *McGee* stands for the proposition that a

single <u>contractual</u> relationship with an in-state party may be sufficient in certain circumstances to

establish if that contractual relationship establishes a substantial connection to the forum state.

Here, unlike *Noble Security* and *McGee*, there is no contractual relationship between

Plaintiffs and the Bieber Defendants and, as explained above, Bieber's November 2010

performance is not sufficient to create a "substantial connection" to Virginia.  Accordingly,

Bieber's November 2010 performance of "Somebody to Love" should not be sufficient to

establish specific jurisdiction over the Bieber Defendants.

> **2.**     **The release of albums and CDs in Virginia containing "Somebody To Love" do not create a basis for jurisdiction in Virginia.**

Plaintiffs argue on page 7 of their Opposition that "Defendants have, in effect, 'entered'

Virginia through the sale and broadcast of the infringing work."  Plaintiffs <u>incorrectly speculate</u>

that the Bieber Defendants are <u>directly selling</u> CDs, singles, downloads, movies, etc. in Virginia

based solely on printouts from the Internet.  But the Bieber Defendants are not record companies,

record distributors, nor merchandising companies who are responsible for selling and distributing

music and merchandise.  The album "My World 2.0" and the single "Somebody To Love" were

released by the record label, The Island Def Jam Music Group, a division of UMG Recordings Inc., and distributed by Universal Music Group Distribution Corp.  (Declaration of Allison Kaye Scarinzi, ¶ 3 ("Kaye Decl.").)  The motion picture, "Never Say Never," was distributed by Paramount Pictures.  (*Id.*, ¶ 6.)

Plaintiffs' arguments are based upon a misunderstanding of how the music industry functions.  "An artist signs a recording contract with a major label (Warner Bros., Columbia, etc.) and hands in his or her recordings.  The company then turns these into records . . .  It ships [the artist's] records to a **distributor**, who is the wholesaler that sells [the artist's] records to the stores and also distributes [the artist's] music digitally . . . . The major record companies are all distributed by **major distributors**, which are gigantic distribution networks that move records from manufacturing plants into the stores."  Donald Passman, *All You Need To Know About The Music Business*, Free Press, p. 61, 63  (6th Ed. 2006) (emphasis in original).

The case of *Bridgeport Music, Inc. v. Still N the Water Publishing*, 327 F.3d 472 (6th Cir. 2003) *cert. denied* 124 S.Ct. 399, 540 U.S. 948, 157 L.Ed.2d 279 is highly instructive as to the application of personal jurisdiction rules to copyright cases involving the sale and distribution of music.  In *Bridgeport Music*, a music publisher, Bridgeport, sued a competing music publishing company, NTW, a Texas corporation, and a record company, DM, a Florida corporation, for copyright infringement based upon the defendants' alleged sampling of Bridgeport's music in several rap and hip-hop songs.  327 F.3d at 475-76.  Defendants moved to dismiss for lack of personal jurisdiction, claiming jurisdiction was not proper in Tennessee.  *See id.*

The Sixth Circuit first described the test for specific personal jurisdiction, which is substantially identical to the Fourth Circuit's test.[4]  Bridgeport argued that specific jurisdiction

---

[4] The Sixth Circuit's specific jurisdiction test is as follows:

was appropriate over NTW, the music publisher, because NTW: (1) licensed music to record companies that sold records in Tennessee, and NTW received royalties from those sales; (2) NTW did not object to its music being sold in Tennessee; and (3) NTW knew the record company distributed nationally and was likely to sell its music in Tennessee. *Id.* at 480. The court rejected these facts as establishing specific jurisdiction, holding that "NTW's knowledge that [the record company] was likely to distribute NTW's compositions nationally, coupled with its lack of objection to Tennessee sales, if such sales were ever to occur, is insufficient conduct upon which to predicate purposeful availment." *Id.* The court specifically noted that how the record company exploits the music is "out of [NTW's] hands." *Id.*

Plaintiffs' arguments for asserting jurisdiction over the Bieber Defendants in Virginia are equivalent to the arguments rejected by the Sixth Circuit in *Bridgeport Music* – *i.e.*, that "My World 2.0" and "Somebody To Love" are sold nationally and in Virginia by record companies and distributors, and that the Bieber Defendants profit from these sales. But there is no evidence that the Bieber Defendants control or direct where the music is sold, or purposefully directed sales towards Virginia. These decisions are made by the record company and its distributor and, with respect to the movie, by the movie distributor. As in *Bridgeport Music*, the court should find that the Bieber Defendants' knowledge of national sales of "My World 2.0" and "Somebody To Love" should not be a sufficient basis for establishing jurisdiction over them in Virginia.

---

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Company v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968).

Finally, although not raised by the Opposition, the "stream of commerce" theory of personal jurisdiction is inapplicable to this case because the Bieber Defendants are neither manufacturers nor distributors, and there is no evidence that the Bieber Defendants directed the sale of any CDs, downloads, etc. to Virginia.  *See J. McIntyre Machinery, Ltd. v. Nicastro*, –––– U.S. ––, 131 S.Ct. 2780, 2788, 180 L.Ed.2d 765 (2011) ("The defendant's transmission of goods permits the exercise of jurisdiction <u>only where the defendant can be said to have targeted the forum</u>; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.") (Emphasis added); *Prototype Prod., Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691, 701-02 (E.D. Va. 2012) ("The stream of commerce theory of personal jurisdiction applies generally to cases in which a manufacturer sells a product to a third-party intermediary, which then sells the product to customers in the forum state.").

### 3. The Bieber Defendants do not own or operate websites selling Bieber merchandise or the infringing work.

Plaintiffs further argue that "Bieber maintains an official store website, http://justinbieber.shop.bravadousa.com, which sells Bieber-related merchandise, including the infringing work, and which can be accessed by Virginia residents for that purpose; *see id.* At ¶ 9." (Opp., p. 4.)  Plaintiffs also claim that "Bieber owns and maintains an interactive fan website, www.bieberfever.com, with for-pay content that can be accessed 24 hours a day by Virginia residents; *see id.* At ¶¶ 10-11." (*Id.*)  In support of these assertions, Plaintiffs cite to Internet printouts reflecting that Bieber's name, likeness and image are used on the websites, and Plaintiffs make the speculative assertion that Bieber therefore "owns" and "maintains" the websites.

Plaintiffs cite on pages 11 and 12 of their Opposition the test adopted by the Fourth Circuit for determining whether personal jurisdiction is appropriate in cases involving Internet

websites.  "[A] State may, consistent with due process, exercise judicial power over a person

outside of the State when that person (1) directs electronic activity into the State, (2) with the

manifested intent of engaging in business or other interactions within the State, and (3) <u>that</u>

<u>activity creates, in a person within the State, a potential cause of action cognizable in the State's</u>

<u>courts</u>."  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)

(emphasis added).

     Plaintiffs first rely upon *Match.com, L.L.C. v. Fiesta Catering Int'l, Inc.*, No. 1:12-cv-363

(E.D. Va. January 31, 2013) as allegedly supporting the Court's exercise of specific jurisdiction

over the Bieber Defendants.  But this case is distinguishable for several reasons.  First, in

*Match.com*, plaintiff sued for trademark infringement because the defendants maintained

websites  – xxxmatch.com and eroticmatch.com – that directly incorporated Match.com's

trademarks, and which linked to another "adult dating service" website that directly competed

with Match.com.  The plaintiff's causes of action in *Match.com* <u>arose directly out</u> of defendant's

websites that utilized the plaintiff's trademarks in Match.com.  The district court found that "the

defendants' activity demonstrates a clear intent to purposefully target Virginia" because of the

number of Virginia subscribers (8,935), the one million in profit that defendants had made in

Virginia, and the "target[ing] [of] Virginia residents by advertising prominently the number of

subscribers in the Virginia locale of a Virginia user of the website and offer[ing] cash rewards to

Virginia residents that refer new subscribers.  *Id.* at *3.

     Similarly, in *Bright Imperial Ltd. v. RT MediaSolutions, S.R.O*, No. 1:11-cv-935-LO-

TRJ, 2012 WL 1831536, at *1 (E.D. Va. May 18, 2012), plaintiffs sued a foreign defendant

claiming that it had violated the plaintiff's trademark in the REDTUBE mark, which defendant

used in the domain name for its website that sold adult content.  The district court held that

jurisdiction was appropriate because the website had sixteen Virginia users and generated $1,620 in revenue. 2012 WL 1831536, at *6, *8.

Contrary to Plaintiffs' assertions and in direct contrast to the defendants in *Match.com* and *Bright Imperial*, the Bieber Defendants neither own nor operate the websites cited by Plaintiffs as allegedly supporting the exercise of jurisdiction. (Kaye Decl., ¶¶ 4-5.) The website, http://justinbieber.shop.bravadousa.com, is owned and operated by Bravado International Group Merchandising Services, Inc., a merchandising company owned by Universal Music Group. (*Id.*, ¶ 4.) The website, www.bieberfever.com, is owned and operated by Artist Arena, a company which is in turn owned by Warner Music Group. (*Id.*, ¶ 5.) Thus, *Match.com* and *Bright Imperial* are wholly distinguishable because the defendants in those cases both owned and operated the websites at issue.

Further, unlike the plaintiffs in *Match.com* and *Bright Imperial*, Plaintiffs cannot demonstrate that the Bieber Defendants have a certain number of subscribers on the websites in Virginia, have generated revenues in a certain amount from those websites, and have expressly targeted Virginia residents because the websites are not owned nor operated by the Bieber Defendants. *See J. McIntyre Mach.,* 131 S.Ct. at 2790 (intent to serve the entire U.S. market insufficient to establish that the defendant had an intent to serve the New Jersey market in particular); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir.2003) (semi-interactive website did not establish personal jurisdiction in forum where there was no "manifest intent" on the part of the defendant to transact business in the forum in particular).

Finally, Plaintiffs' claims in this case do not "arise out of" the websites cited by Plaintiffs, in contrast to *Match.com* and *Bright Imperial* where the domain names of the websites

that gave rise to jurisdiction in Virginia were also a basis for the trademark claims against the defendants.  The Fourth Circuit has held that the internet activity must create the claim for jurisdiction to be appropriate based upon a website.  *ALS Scan*, 293 F.3d at 714 (the internet "activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."); *Tharp v. Colao*, 2012 WL 1999484, *4 (D.Md. 2012) (*quoting Windsor v. Spinner Indus. Co., Ltd.*, 825 F. Supp. 2d 632, 639 (D.Md.2011)) ("the defendant's 'web presence ... is immaterial' when, as here, the allegedly tortious conduct is unrelated to the website.").

Plaintiffs' claims are not based on the domain names nor any information posted on the websites.  Plaintiff does not contend that the song "Somebody to Love" is available for purchase on www.bieberfever.com.  However, Plaintiff argues that "[o]n Bieber's personal website, he provides a catalogue of merchandise for sale to Virginia residents, including the album, My World 2.0, which directly infringes on Plaintiffs' copyright.  *See* Wilson Decl. ¶ 9."  (Opp., p. 11.)  Plaintiffs are again wrongly referring to http://justinbieber.shop.bravadousa.com as "Bieber's personal website," when the website is owned and operated by Bravado International Group Merchandising Services, Inc. ("Bravado"), a merchandising company owned by Universal Music Group.  The fact that the infringing work is sold by Bravado on the website should not be sufficient for establishing jurisdiction for the same reasons discussed in the preceding section (*i.e.*, the sale of an artist's music by a record company is not sufficient to establish jurisdiction in every jurisdiction where the CDs are sold).  *Bridgeport Music, supra*, 327 F.3d at 475-76.

### 4.   Plaintiffs have not shown any evidence that the Bieber Defendants expressly aimed conduct at Virginia that was intended to cause a tort.

Plaintiffs further argue on pages 7 and 8 of their Opposition that specific jurisdiction is appropriate in Virginia because Virginia is the "locus of the tort" and Plaintiffs were injured in Virginia.  But specific jurisdiction has not been held to be appropriate based solely on the

location of the plaintiffs' injury, and none of the cases cited by Plaintiffs support jurisdiction being proper over the Bieber Defendants.  Plaintiffs cite *Calder v. Jones*, 465 U.S. 783, 791, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) to support their argument, but like other circuits, the Fourth Circuit has interpreted the *Calder* "effects test" narrowly and stressed "how important it is in light of *Calder* to look at whether the defendant has expressly aimed or directed its conduct toward the forum state." *Young v. New Haven Advocate*, 315 F.3d 256, 262–63 (4th Cir. 2002) (emphasis added).

Two cases are highly instructive of this circuit's approach to the *Calder* "effects test" in copyright cases.  In *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649 (D. Md. 2000), a Maryland corporation, Ottenheimer, sued a United Kingdom corporation, Haddock, for copyright infringement.  Haddock moved to dismiss for lack of personal jurisdiction. Ottenheimer argued that "because copyright infringement constitutes an 'intentional tort', it can rely on the 'effects' test set forth in *Calder v. Jones*, 465 U.S. 783, 791, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and that the 'effects' of the alleged copyright infringement are necessarily felt at its principal place of business in Maryland." *Id.* at 653.  The district court held that "[t]his argument, however, stretches *Calder* beyond the limits of the Constitution." *Id.*  The court dismissed for lack of personal jurisdiction, finding that "while Haddock may have maintained tenuous contacts with the state of Maryland, in the course of conducting its business within in a variety of international markets, it cannot be said that Haddock intentionally aimed its tortious conduct at Maryland such that Maryland was the focal point of Haddock's activity and the focal point of any harm suffered by Ottenheimer." *Id.* at 654.

In *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780 (D. Md. 2000), a Maryland corporation, CoStar, sued a California corporation, LoopNet, and its president and CEO, De

Andre, for copyright infringement. De Andre moved to dismiss for lack of personal jurisdiction. The district court emphasized that "[s]ince *Calder*, courts have carefully limited the application of the effects test to cases where the nonresident commits an intentional tort knowing the conduct will cause harm to the plaintiff in the forum state." *Id.* at 785. The district court refused to exercise jurisdiction over De Andre, finding there was no evidence of "intentionally tortious conduct" directed at Maryland causing injury to CoStar. *See id.* at 786. The court found that "De Andre's conduct in relation to the allegedly infringing activity can at most be characterized as negligent. Although the distinction between negligent and intentional infringement is irrelevant for purposes of liability, *see Educational Testing Serv. v. Simon*, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999) (copyright infringement is a strict liability tort), it is dispositive in the *Calder* 'effects' analysis, *see Figi Graphics Inc. v. Dollar Gen. Corp.*, 33 F. Supp. 2d 1263, 1267 (S.D. Cal. 1998) (effects test not satisfied where plaintiff "failed to present any evidence demonstrating that [defendant] 'intentionally' infringed upon [plaintiff's] copyrights")." *Id.* at 787.

Here, there is no evidence in the record that the Bieber Defendants intended to infringe Plaintiffs' copyrights, or directed any activity towards Virginia with the intention of infringing Plaintiffs' copyrights. As discussed in the Motion, Plaintiffs do not contend that the Bieber Defendants participated in the "conspiracy" to infringe Plaintiffs' song. (*See* Compl., ¶¶ 41-42.) As such, the Court cannot exercise jurisdiction over the Bieber Defendants pursuant to the *Calder* effects test.

### 5. Alleged contacts that are unrelated to Plaintiffs' causes of action cannot establish specific jurisdiction over the Bieber Defendants.

In Opposition, Plaintiffs fundamentally confuse the distinction between specific jurisdiction and general jurisdiction under the Due Process Clause by arguing that specific

jurisdiction is appropriate based upon a series of <u>alleged</u> "contacts" between the Bieber

Defendants and Virginia that are unrelated to the causes of action against the Bieber Defendants.

Specifically, on pages 4 and 5 of their Opposition, Plaintiffs describe several other alleged

contacts between the Bieber Defendants and Virginia that are <u>unrelated</u> to copyright claims

regarding "Somebody to Love":

> 2. On November 13, 2010, Bieber videotaped part of his video for the song "Pray" at Children's Hospital for the King's Daughters in Norfolk, Virginia; *see* Wilson Decl., ¶ 14;

> 3. On December 11, 2012, Bieber performed a concert at the Patriot Center in Fairfax, Virginia; *see* Bieber Decl. at ¶ 4;

> 4. Bieber has appeared on numerous television shows that are broadcast in Virginia, including "CSI: Crime Scene Investigations" on CBS, "The Daily Show" on Comedy Central, and the "2010 World Series" Game 3 pre-show; *see* Wilson Decl., ¶¶ 6-8;

> 6. Bieber owns and maintains an interactive fan website, <u>www.bieberfever</u>.com, with for-pay content that can be accessed 24 hours a day by Virginia residents; *see id.* at ¶¶ 10-11;

> 9. In 2011, Bieber released an album "Under the Mistletoe," which reached "Platinum" status in the United States; *see id.* at ¶ 4;

> 13. As of July 19, 2013, Bieber has over 42,000,000 "followers" on his Twitter account; *see id.* at ¶ 2;

(Opp., pp. 4-5.)

Plaintiffs do not contend that any of the aforementioned "contacts" involve the alleged

infringement of their song, yet Plaintiffs incorrectly contend that these contacts give rise to

"specific jurisdiction" over the Bieber Defendants.  This is incorrect.  In *ALS Scan, Inc. v.*

*Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002), the court explained that "<u>if the</u>

<u>defendant's contacts with the State are not also the basis for suit</u>, then jurisdiction over the

defendant must arise from the defendant's general, more persistent, but unrelated contacts with

the State.  To establish general jurisdiction over the defendant, the defendant's activities in the

State must have been 'continuous and systematic,' a more demanding standard than is necessary

for establishing specific jurisdiction."  (Emphasis added); *see also eServices, LLC v. Energy Purchasing, Inc.*, 2010 WL 6195580, *10 (E.D. Va. 2010) (refusing to consider contacts between defendants and Virginia for purposes of determining specific jurisdiction that were unrelated to claims in the complaint).

Thus, Plaintiffs cannot establish specific jurisdiction by citing alleged contacts between the Bieber Defendants and Virginia that are unrelated to the causes of action in the Complaint.

**6.     The exercise of jurisdiction over the Bieber Defendants would not be reasonable under the third prong of the specific jurisdiction test.**

"The third prong—that the exercise of personal jurisdiction be constitutionally reasonable—permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there.  Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies."  *Consulting Engineers*, *supra*, 561 F.3d at 279.

Applying the foregoing factors, it would not be reasonable to exercise jurisdiction over the Bieber Defendants.  It would be highly burdensome for the Bieber Defendants to defend this case in Virginia because Bieber is a resident of California.  Virginia should have little interest in adjudicating this dispute because all of the alleged acts that gave rise to Plaintiffs' claims occurred outside Virginia, principally in California.   All of the claims in the case are federal copyright claims that do not implicate the laws of Virginia.  Finally, there is no reason presented for why Plaintiffs cannot obtain convenient and effective relief by pursuing their claims in California.

**B.**     **The Court Cannot Exercise General Jurisdiction Over The Bieber Defendants**

The Bieber Defendants demonstrated in their Motion that their contacts with Virginia were far less extensive than the contacts in either *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411-412 (1984) or *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir. 1993) that were deemed insufficient to confer general jurisdiction.  Their contacts cannot be characterized as "continuous and systematic" so as to justify the exercise of general jurisdiction.

In arguing that it is proper for the Court to exercise "general jurisdiction" over the Bieber Defendants, Plaintiffs rely upon the identical speculative assertions about Bieber's supposed ownership and maintenance of websites bearing his name and likeness, and seek jurisdictional discovery on the issue of amount of sales, how many times Virginia residents have visited the websites, etc.

Although "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted," the Fourth Circuit has recognized that "district courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them].' " *Carefirst of Md., Inc. v. Carefirst Urgent Care Center*, 334 F.3d 390, 402 (4th Cir. 2003) (*quoting Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir.1993). "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Id.* (*citing McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir.1983)).  *See also ALS Scan*, 293 F.3d at 716 n. 3 (affirming denial of jurisdictional discovery because plaintiff "failed . . . to proffer any further facts that it could demonstrate that would be material to the . . . jurisdictional ruling"; *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988) ( "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not

permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

The Court should deny jurisdictional discovery in this case from the Bieber Defendants because they neither own nor operate the websites cited by Defendants, and Plaintiffs have offered only "speculative assertions" about Bieber's relationship to the websites.

C.      **Venue Is Not Proper Within This District**

In the Motion, the Bieber Defendants pointed in determining whether venue is appropriate under § 1391(b)(2), "[e]vents that relate only tangentially to the claim cannot constitute a 'substantial part of the events or omissions giving rise to the claim'; indeed, strictly speaking, they do not 'give rise to' the claim at all." *MTGLQ Investors, L.P. v. Guire*, 286 F.Supp.2d 561, 565 (D.Md. 2003).

Plaintiffs first argue that venue is appropriate in this district because Bieber performed "Somebody to Love" at the November 2010 concert.  (Opp. p. 17.)  But for the reasons discussed in the preceding Section I.A.1, it would be incorrect to characterize this single concert performance as giving rise to a "substantial part" of the "events or omissions" in this case.  The November 2010 concert did not "give rise" to Plaintiffs' claims, and is better characterized as relating only tangentially to Plaintiffs' central claim – that certain Defendants allegedly conspired to deliberately copy Plaintiffs' song.

Plaintiffs further argue that venue is appropriate because the Bieber Defendants "advertis[ed] and [sold] the infringing work to Virginia residents, advertis[ed] and [sold] tickets to a movie showing Bieber performing the infringing work to Virginia residents, and broadcast[] performances of the infringing work into Virginia"  (Opp. p. 17.)  As discussed in Section I.A.2, this argument is based on incorrect speculation, and not admissible evidence, with respect to the

Bieber Defendants' role in the sale of CDs, downloads, movies, etc. containing the alleged infringing work.

In support of their arguments that venue is appropriate, Plaintiffs cite several cases that are distinguishable from the instant case.  The claim in *Ciena Corp. v. Jarrard*, 203 F.3d 312 (4th Cir.2000) involved the breach of an employment agreement that an employee had sent to the forum state, Maryland, to be signed by the employer, which was headquartered in Maryland. 203 F.3d at 317.  The employee had visited the forum frequently and acquired confidential information during the visits.  *See id.* at 318.  Because "[m]any of the events and facts central to this case concerned [the employee's] training, her access to and knowledge of trade secrets, and her job responsibilities, all of which are anchored in Maryland," the Fourth Circuit concluded that venue was proper in Maryland.  *See id.*

In *Production Group Intern., Inc. v. Goldman*, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004), a Virginia corporation sued a Florida company in Virginia for breaching a non-solicitation and confidentiality agreement by soliciting a third-party, Red Bull.  The court found that venue was proper because "plaintiff's Virginia headquarters is located in this district, and because defendant's communications with and visits to that headquarters come within the 'sequence of events underlying the claim' … Second, a substantial part of plaintiff's effort to win and maintain Red Bull as a client occurred at plaintiff's headquarters.  Third and finally, a great part of the confidential information that defendant allegedly used to solicit Red Bull originated at the [Virginia] headquarters as well."  *Id.*

Finally, in *Verizon Online Services, Inc. v. Ralsky*, 203 F. Supp. 2d 601 (E.D. Va. 2002), the court found that venue was appropriate in Virginia because the Michigan defendant had sent millions of spam email messages through servers located in Virginia.  *See id.* at 623.

In contrast to *Ciena Corp* and *Production Group*, it cannot be said that the Bieber Defendants have visited Virginia "frequently," or that the claims are based upon contacts between Plaintiffs and the Bieber Defendants in Virginia.  The only visit related to Plaintiffs' claims is the November 2010 concert performance, which only relates tangentially to Plaintiffs' claims.  Unlike *Verizon Online*, this case does not involve "spam email"  and there is no allegation that the Bieber Defendants sent millions of spam email messages to Virginia that formed the basis for Plaintiffs' claim.

For the foregoing reasons, venue is not proper in this district.

## III.   <u>CONCLUSION</u>

For all the reasons stated above, this Court should grant the Defendants' motion and dismiss Defendants from this action.

Dated:  August 16, 2013                              Respectfully submitted,

   */s/ Stephen E. Noona*_____
Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

Howard Weitzman (*pro hac vice*)
Jeremiah T. Reynolds (*pro hac vice*)
Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA  90401
Telephone:  310-566-9800
Facsimile:  310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Attorneys for Defendants Justin Bieber, Universal Music Corp., Bieber Time Publishing, LLC and The Island Def Jam Music Group*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
Jeffrey D. Wilson
Virginia State Bar No. 75734
Byers Law Group
142 W. York Street, Suite 910
Norfolk, VA  23510
Phone:  757-227-3340
Facsimile:  757-227-3341
duncan.byers@byerslawgroup.com
jdwilson@byerslawgroup.com
admin@byerslawgroup.com

*Attorneys for Plaintiffs*
*Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com

*Attorney for Defendants Justin Bieber and*
*Bieber Time Publishing LLC,*
*Universal Music Corp., The Island Def Jam Music Group,*
*a division of UMG Recordings, Inc. and Usher Raymond, IV, p/k/a Usher*

Jonathan D. Davis, Esq. *(pro hac vice)*
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, New York 10016
Telephone:  212- 687-5464
Facsimile:  212- 557-0565
jdd@jddavispc.com

*Attorneys for Defendant*
*Usher Raymond, IV, p/k/a Usher*

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC  20001
Telephone:  202-618-5000
Facsimile:  202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Heather Bright, B-RHAKA
Publishing LLC, WB Music Corp. and
Sony/ATV Music Publishing LLC*

    */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  757-624-3169
senoona@kaufcan.com