UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DEVIN COPELAND, et al.,

              Plaintiffs,

    v.                                      Civil Action No. 2:13cv246

JUSTIN BIEBER, et al.,

              Defendants.

## ORDER

On May 2, 2013, Plaintiffs Devin Copeland and Mareio Overton brought this suit against the following Defendants: Justin Bieber; Bieber Time Publishing, LLC ("Bieber Time"); Usher Raymond, IV; Heather Bright d/b/a B-RHAKA Publishing; B-RHAKA Publishing ("B-RHAKA"); Ray Romulus d/b/a Please Enjoy the Music; Please Enjoy the Music; Jonathan Yip d/b/a Products of the Street; Products of the Street; Jeremy Rivers d/b/a Sumphu; Sumphu; Universal Music Corp. ("Universal"); Universal Music Publishing Group; Sony/ATV Music Publishing, LLC ("Sony"); WB Music Corp. ("WB"); The Island Def Jam Music Group ("Island"); Stage Three Music (U.S.) Inc.; Stage Three Music, LLC; and Jonetta Patton.

Plaintiffs assert that the song "Somebody to Love," recorded in 2010 by Mr. Bieber and Mr. Raymond infringes Plaintiffs' copyright to a song recorded by Mr. Copeland in 2008, which was also titled "Somebody to Love." Plaintiffs seek actual and profit damages in the amount of $10,000,000, as well as punitive damages.

With Plaintiffs' consent, Defendants were given extensions of time in which to answer the Complaint. Island and Universal then moved to dismiss the Complaint for failure to state a claim upon which relief could be granted (the "Island Motion to Dismiss"). ECF No. 17. Mr.

Bieber and Bieber Time moved to dismiss the Complaint for lack of personal jurisdiction and for improper venue (the "Bieber Motion to Dismiss"). ECF No. 20. Mr. Bieber and Bieber Time also filed a brief in support of the Island Motion to Dismiss.

Ms. Bright, B-RHAKA, Sony, and WB later moved to join in the Island Motion to Dismiss. ECF No. 30. Ms. Bright and B-RHAKA also moved to join in the Bieber Motion to Dismiss. ECF No. 31.

Mr. Raymond moved to dismiss the Complaint for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a) (the "First Raymond Motion to Dismiss"). ECF No. 43. Mr. Raymond also moved to dismiss the claim for punitive damages for failure to state a claim upon which relief could be granted (the "Second Raymond Motion to Dismiss"). ECF No. 47.

Mr. Raymond also moved to join in the Island Motion to Dismiss. ECF No. 49. Mr. Bieber, Bieber Time, Island, and Universal filed a brief in support of the Second Raymond Motion to Dismiss. ECF No. 55. Ms. Bright, B-RHAKA, Sony, and WB moved to join in the reply brief to the Island Motion to Dismiss. ECF No. 59. Ms. Bright and B-RHAKA moved to join in the reply brief to the Bieber Motion to Dismiss. ECF No. 60. Mr. Raymond moved to join in the reply brief to the Island Motion to Dismiss. ECF No. 61.

The parties received several unopposed extensions of the briefing deadlines. Briefing is now complete, and all pending motions are ripe for decision by the Court. Plaintiffs have not responded to the Second Raymond Motion to Dismiss or the motions for joinder.

2

Defendants' motions for joinder (ECF Nos. 30, 31, 49, 59, 60, 61) are **GRANTED** as unopposed. The following motions are now before the Court:

- The Bieber Motion to Dismiss, seeking dismissal for lack of personal jurisdiction and for improper venue, filed by Mr. Bieber, Bieber Time, Ms. Bright, and B-RHAKA. ECF No. 20.

- The First Raymond Motion to Dismiss, seeking dismissal for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a), filed by Mr. Raymond. ECF No. 43.

- The Second Raymond Motion to Dismiss, seeking dismissal of Plaintiffs' claim for punitive damages, filed by Mr. Raymond, and also supported by Mr. Bieber, Bieber Time, Island, and Universal. ECF No. 47.

- The Island Motion to Dismiss, seeking dismissal of the Complaint for failure to state a claim upon which relief can be granted, filed by Island, Universal, Ms. Bright, B-RHAKA, Sony, WB, and Mr. Raymond, and also supported by Mr. Bieber and Bieber Time. ECF No. 17.

The Court must resolve Defendants' personal jurisdiction, venue, and convenience arguments (the "non-merits" arguments) before considering whether the Complaint states a claim upon which relief can be granted. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–32 (2007). The Court begins by addressing the Bieber Motion to Dismiss and the First Raymond Motion to Dismiss, and then considers the unopposed Second Raymond Motion to Dismiss and the Island Motion to Dismiss.

## I. NON-MERITS ARGUMENTS

Mr. Bieber, Bieber Time, and Mr. Raymond argue that this Court lacks personal jurisdiction over them.[1] Defendants also argue that venue is improper or, in the alternative, that this Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer the case to the Central District of California for the convenience of the parties.

### A. FACTUAL BACKGROUND

In deciding questions of personal jurisdiction and venue in the absence of jurisdictional discovery, "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (personal jurisdiction); *accord Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (venue).

"[T]he allegations of the complaint . . . must be taken as true" unless the uncontroverted evidence contradicts them. *Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984) (omission provided) (quoting *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977)) (internal quotation marks omitted).

The Complaint and available evidence provide the following facts:

Mr. Bieber is a resident of California. Bieber Decl. para. 1, ECF No. 22. Bieber Time is a Delaware company "that was formed to hold [Mr. Bieber's] . . . copyrights and conduct [his] music publishing business." *Id.* at para. 2. Mr. Raymond is a resident of Georgia. Raymond Decl. para. 4, ECF No. 46.

---

[1] Ms. Bright and B-RHAKA have received joinder in the Bieber Motion to Dismiss. It appears that these Defendants believe that the Court lacks personal jurisdiction over them. However, the motion that they have joined does not argue that the Court lacks personal jurisdiction over them, nor has this issue been briefed in connection with that motion. *See* Br. Supp. Bieber Mot. Dismiss 1, ECF No. 21 (arguing that the Court lacks personal jurisdiction over Mr. Bieber and Bieber Time, but not challenging the Court's jurisdiction over Ms. Bright and B-RHAKA). Therefore, any challenge that Ms. Bright and B-RHAKA may have to the Court's personal jurisdiction over them is not before the Court.

Most of the remaining defendants are located in California, although some are in Delaware, Georgia, New York, or Tennessee. Compl. paras. 8–14, 16–24, ECF No. 1. Plaintiffs are residents of Virginia. *Id.* at paras. 4–5.

Mr. Copeland, Mr. Raymond, and Mr. Bieber are a musical performers and writers in the musical genre referred to as Rhythm and Blues. *Id.* at paras. 26, 35, 39. Mr. Overton is a songwriter. *Id.* at para. 27. Mr. Romulus, Mr. Yip, and Mr. Reeves are songwriters and music producers, and perform as "the Stereotypes." *Id.* at para. 38.

In early 2008, Plaintiffs wrote a song entitled "Somebody to Love" ("Plaintiffs' song") which Mr. Copeland recorded for his album "My Story II." *Id.* at paras. 28–29. Plaintiffs copyrighted this song on October 2, 2008. *Id.* at para. 30.

In October and November 2009, Plaintiffs met Peter Stockton, Kevin Lawson, and Malik Brooks of Sangreel Media ("Sangreel"). *Id.* at para. 33. Sangreel finds new musical artists for companies, including Island and Sony. *Id.* Sangreel expressed interest in promoting Plaintiffs' songs, and Plaintiffs provided Sangreel with copies of several songs, including "Somebody to Love," for promotional purposes. *Id.* at paras. 33–34. Sangreel provided these copies to other artists, including Mr. Raymond. *Id.* at para. 35.

On January 5, 2009, Mr. Copeland conversed with Mr. Lawson and Ms. Patton. *Id.* at para. 36. Ms. Patton is Mr. Raymond's mother and is his manager. *Id.* Ms. Patton indicated that she and Mr. Raymond had listened to "My Story II" and were interested in having Mr. Copeland rerecord the album with Mr. Raymond and go on a performance tour with him during the summer of 2009. *Id.* However, neither Ms. Patton nor any other representative of Mr. Raymond contacted Plaintiffs thereafter. *Id.* at para. 37.

Mr. Raymond then wrote a song entitled "Somebody to Love" ("the Raymond accused song"), which he produced with the Stereotypes and Ms. Bright. *Id.* at para. 38. The song was uploaded to the internet on February 28, 2010. *Id.* Ms. Bright claims to have co-written this song. *See* Bright Decl. para. 9, ECF No. 32. Plaintiffs assert the Raymond accused song is a direct and deliberate copy of Plaintiffs' song. Compl. para. 38, ECF No. 1.

Mr. Raymond, Mr. Bieber, and the Stereotypes then produced another recording of the Raymond accused song, which was released on Mr. Bieber's album "My World 2.0" in the spring of 2010 ("the Bieber accused song"). *Id.* at paras 41–43. This song was written and recorded in Los Angeles, California and Atlanta, Georgia. Holland Decl. Ex. B, ECF No. 64-2 (album cover stating that the vocals for this song were recorded in Atlanta and the music was recorded Los Angeles); *see also* Bieber Decl. para. 5, ECF No. 22 (stating that this song was written and produced in Los Angeles); 2d Wilson Decl. Ex. H, ECF No. 65-8 (interview in which Mr. Bieber states that "We did most of ['My World 2.0'] in Atlanta this time.").

Plaintiffs allege that Defendants knew that their actions were infringing, and have profited from those actions. Compl. paras. 53–55, ECF No. 1.

The Bieber accused song performed well in the market. *Id.* at para. 44. Mr. Raymond and Mr. Bieber later recorded a remix of this song, which was released on June 25, 2010. *Id.* at para. 45. Mr. Bieber has performed the Bieber accused song on numerous occasions, and continues to perform it as of the date of the Complaint. *Id.* at paras. 49–50. On November 13, 2010, Mr. Bieber performed the Bieber accused song at a concert in Norfolk, Virginia. Bieber Decl. para. 4, ECF No. 22.

On December 1, 2010, Mr. Bieber filmed part of a music video in Norfolk, Virginia, but this music video contained no potentially infringing content. 1st Wilson Decl. Ex. L, ECF No.

40-13.  In 2011, Mr. Bieber appeared in a film which featured clips of the Bieber accused song. *See* 1st Wilson Decl. Ex. N, ECF No. 40-15; 1st Wilson Decl. Ex. P, ECF No. 40-17.  On December 11, 2012, Mr. Bieber performed at a concert in Fairfax, Virginia, but no potentially infringing activity occurred.  Bieber Decl. para. 4, ECF No. 22.

Mr. Bieber and Mr. Raymond have each appeared on national television on several occasions.  1st Wilson Decl. Exs. E, F, G, ECF Nos. 41-6, 41-7, 41-8 (Mr. Bieber); 2d Wilson Decl. Ex. A, ECF No. 65-1 (Mr. Raymond).  One of these appearances, during which Mr. Bieber performed the Bieber accused song, is viewable on the website "YouTube."  1st Wilson Decl. para. 13, ECF No. 40.  A video of the remix of the Bieber accused song, depicting both Mr. Bieber and Mr. Raymond, is also on YouTube.  2d Wilson Decl. Ex. C, ECF No. 65-3.

Mr. Bieber has an active account on the social website "Twitter."  1st Wilson Decl. Ex. A, ECF No. 40-2.  There are also several websites related to Mr. Bieber, including an online store where users can purchase the Bieber accused song.  1st Wilson Decl. Exs. H, J, K, ECF Nos. 40-9, 40-11, 40-12.  However, Mr. Bieber does not own or operate these websites.  Scarinzi Decl. para. 4–5, ECF No. 57.  An album by Mr. Raymond including the remix of the Bieber accused song is also available for purchase online.  2d Wilson Decl. Ex. G, ECF No. 65-7.

## B. Personal Jurisdiction

### 1. Standard of Law

Defendants first assert that the Court lacks personal jurisdiction over them.  "A federal district court may only exercise personal jurisdiction over a foreign [litigant] if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment."  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).  "Because Virginia's long-

arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Id.*

Personal jurisdiction under the Due Process Clause can exist in two ways: general jurisdiction or specific jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). "To establish general jurisdiction over [a] defendant, the defendant's activities in the State must have been 'continuous and systematic[.]'" *Id.* at 712.

"If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction," with the Court considering "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* (alteration in original) (quoting *Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001)).

"Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 238 (D. Md. 1992)). However, such a contact must involve purposeful conduct, and not a mere "'random, fortuitous, or attenuated'" connection. *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012) (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997)). If the contact involves the sale of a defendant's product in the forum state, specific jurisdiction exists "only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J.*

*McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (plurality opinion); *see also ESAB v. Zurich*, 685 F.3d at 392 (citing this plurality holding as binding).

The third prong of the test for specific jurisdiction requires that "the exercise of personal jurisdiction . . . be constitutionally 'reasonable.'" *ALS Scan*, 293 F.3d at 712 (quoting *Christian Science Bd. of Dirs.*, 259 F.3d at 216). This requirement will be met unless the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Factors considered in this analysis include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs Corp.*, 561 F.3d at 279.

2. Analysis

For clarity, the Court will analyze personal jurisdiction with respect to each Defendant separately.

a. Mr. Bieber

Mr. Bieber performed the Bieber accused song at a concert in Virginia. Bieber Decl. para. 4, ECF No. 22. He argues that this contact fails to give rise to specific jurisdiction because it does not form the gravamen of Plaintiffs' claims. Br. Supp. Bieber Mot. Dismiss 9, ECF No. 21. Mr. Bieber argues that specific jurisdiction is present only in California, where the allegedly infringing works were composed. *Id.*

This argument misconstrues the requirements of specific jurisdiction. Where infringement occurs in multiple states, specific jurisdiction can be present in each of those states, even if the infringing product was not developed there. *See Mavrix Photo, Inc. v. Brand Techs.,*

*Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (holding that the plaintiff's copyright claim arose out of the viewing of the defendant's infringing photographs in the forum state, even though the uploading of those photographs to the internet occurred elsewhere); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (holding that specific jurisdiction was present in Virginia because the plaintiff alleged that the "defendants purposefully shipped the accused [product] into Virginia through an established distribution channel"). Plaintiffs' claims arise out of Mr. Bieber's allegedly infringing acts. These acts include his concert performance in Norfolk, Virginia. Plaintiffs' claims arise out of Mr. Bieber's activities in Virginia.[2]

Mr. Bieber also argues that this Court's exercise of jurisdiction would be constitutionally unreasonable because litigation in Virginia would be "highly burdensome" to him. Br. Supp. Bieber Mot. Dismiss 9 n.3, ECF No. 21. Mr. Bieber cites no difficulties involved in his litigation of this case beyond the ordinary inconvenience involved in litigating outside one's home state. *See id.* Such ordinary inconvenience fails to render the exercise of specific jurisdiction unreasonable. *See Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 529–30 (4th Cir. 1987). Moreover, Mr. Bieber's contention that Virginia lacks an interest in this dispute because the accused songs were composed in another state is unpersuasive. *See id.* at 525 ("[A] State has an obvious interest in providing a forum for its resident to redress injuries inflicted by

---

[2]    Mr. Bieber asserts in his reply brief that because each act of copyright infringement is a separate claim, an allegedly infringing performance can only establish specific jurisdiction with respect to that performance. Reply Bieber Mot. Dismiss 5, ECF No. 56 (citing *Stone v. Williams*, 970 F.2d 1043, 1049–50 (2d Cir. 1992) (holding, for purposes of the statute of limitations, that each infringing act is an independent claim)). Such a limitation is unsupported by the case law. *See Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (expressing no such limitation when finding personal jurisdiction based on the sale of infringing products in the forum state); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 65 (1st Cir. 2002) (same).

Moreover, an argument that is raised for the first time in a reply brief will generally be regarded as untimely because "the opposing party is [thereby] prejudiced in its ability to respond to the argument." *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 446 (E.D. Va. 2011). By failing to timely raise this argument, Mr. Bieber denied Plaintiffs an opportunity to respond to a theory which, if adopted, would limit a copyrightholder's ability to sue infringers outside the infringer's home state. This argument is untimely and is rejected.

non-residents."). Therefore, this Court concludes that exercising jurisdiction over Mr. Bieber is constitutionally reasonable.

Mr. Bieber's allegedly infringing performance in Virginia gives this Court specific personal jurisdiction over him. The Bieber Motion to Dismiss (ECF No. 20) is **DENIED** with respect to Mr. Bieber's defense of personal jurisdiction.

### b. Bieber Time

Bieber Time also asserts the defense of personal jurisdiction. Plaintiffs have not responded to this assertion. The available information regarding Bieber Time indicates that it is located in Delaware and conducts business for Mr. Bieber. Compl. para. 15, ECF No. 1; Bieber Decl. para. 2, ECF No. 22. There is no evidence that it has any contacts with Virginia.

Because Plaintiffs have failed to advise the Court as to what, if any, connection they believe Bieber Time may have to Virginia, the Bieber Motion to Dismiss (ECF No. 20) is **GRANTED** with respect to Bieber Time. The case is **DISMISSED WITHOUT PREJUDICE** with respect to Bieber Time.

### c. Mr. Raymond

Mr. Raymond also challenges this Court's personal jurisdiction over him. He argues that his connections to Virginia are insufficient to support a finding of personal jurisdiction.

Plaintiffs respond that this Court has specific jurisdiction over Mr. Raymond under the reasoning presented in *Calder v. Jones,* 465 U.S. 783 (1984). "In *Calder* . . . , the Supreme Court held that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." *Carefirst*, 334 F.3d at 397–98.

> This "effects test" of specific jurisdiction is typically construed to require that the plaintiff establish that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*Id.* at 398 n.7.

Under *Calder*, specific jurisdiction exists when a defendant intentionally infringes a copyright belonging to a resident of the forum state, but not when the infringement is merely negligent. *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 787 (D. Md. 2000). Mr. Raymond does not dispute this standard, but argues that the Complaint's allegations regarding his intent are conclusory. Reply 1st Raymond Mot. Dismiss 7–9, ECF No. 66.

The Complaint alleges that "[e]ach and every Defendant knew of the infringing activity." Compl. para. 54, ECF No. 1. Standing alone, this allegation might be conclusory. However, the Complaint also alleges that Plaintiffs discussed their song with Ms. Patton, Mr. Raymond's mother and manager, shortly before Mr. Raymond recorded his allegedly infringing song. *Id.* at para. 36, ECF No. 1. These allegations are sufficient to permit the "reasonable inference[]" that Mr. Raymond was aware of Plaintiffs' copyright at the time of the alleged infringement.[3] *Mylan Labs.*, 2 F.3d at 60.

Because the Complaint alleges facts indicating that Mr. Raymond was aware of Plaintiffs' copyright at the time of the alleged infringement, specific jurisdiction is established under *Calder*, and the First Raymond Motion to Dismiss (ECF No. 43) is **DENIED** with respect to personal jurisdiction.

---

[3] The Court does not yet reach the question of whether the Complaint states a claim of copyright infringement. The Court holds only that the Complaint alleges adequately that any infringement that may have occurred was intentional.

3. Conclusion

This case arises in part out of Mr. Bieber's performance of an allegedly infringing song in this state, and the Complaint alleges that Mr. Raymond knowingly infringed a copyright held by Virginia residents. However, there is no evidence presented regarding any connection Bieber Time may have to Virginia or to the events of this case.

Therefore, the Bieber Motion to Dismiss (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART** with respect to personal jurisdiction, and the First Raymond Motion to Dismiss (ECF No. 43) is **DENIED** with respect to personal jurisdiction.

Defendants' claims against Bieber Time are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

C. VENUE

Defendants also argue that venue is improper. "Civil actions . . . arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant . . . may be found." 28 U.S.C. § 1400(a) (2013). "The term 'may be found' in 1400(a) is interpreted to mean any district which may assert personal jurisdiction over a defendant." *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 773 (D. Md. 2009); *accord Palmer v. Braun,* 376 F.3d 1254, 1259 (11th Cir. 2004); *see also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010) ("This circuit interprets [§ 1400(a)] to allow venue in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction.");[4] *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.,* 8 F.3d 441, 445–46 (7th Cir. 1993) (applying the same standard).

---

[4]　The Court notes that Defendants' ties to Virginia that give rise to personal jurisdiction—Mr. Bieber's allegedly infringing performance in Norfolk, Virginia and Mr. Raymond's alleged willful infringement of a copyright belonging to residents of Chesapeake, Virginia—are all localized to this District. Therefore, if this District were a separate state, it would have jurisdiction over Defendants just as Virginia does.

As discussed above, the Court has personal jurisdiction over Mr. Bieber and Mr. Raymond. Although Plaintiffs have failed to establish this Court's personal jurisdiction over Bieber Time, Bieber Time is no longer in this case. The Court's personal jurisdiction over the other Defendants has not been challenged. Therefore, venue is proper under § 1400(a).[5]

The Bieber Motion to Dismiss (ECF No. 20) and the First Raymond Motion to Dismiss (ECF No. 43) are **DENIED** with respect to venue.

## D. Transfer Under 28 U.S.C. § 1404(a)

Finally, the First Raymond Motion to Dismiss requests that this Court exercise its discretion under 28 U.S.C. § 1404(a) to transfer this case to the Central District of California on the basis of convenience.

### 1. Standard of Law

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2013). The decision whether to transfer a case under this statute "is committed to the discretion of the district court." *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

"[I]n considering whether to transfer venue, a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).

---

[5]   Even if § 1400(a) were not available, venue would be proper under 28 U.S.C. § 1391(b) because several of the events giving rise to this case, including the writing of Plaintiffs' song and Mr. Bieber's performance of the Bieber accused song in Norfolk, Virginia, occurred in this District. *See Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)) ("[I]n determining whether events or omissions are sufficiently substantial to support venue . . . , a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review 'the entire sequence of events underlying the claim.'").

The latter inquiry weighs "the plaintiff's choice of forum, witness convenience and access, party convenience, and the interest of justice." *Koh*, 250 F. Supp. 2d at 633. The burden of proof on each of these factors rests with the moving party. *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992).

2. Analysis

Plaintiffs do not contest that their claims could have been brought in the Central District of California. *See* Resp. 1st Raymond Mot. Dismiss 18–20, ECF No. 63. Therefore, the Court need only consider whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum.

Mr. Raymond's request to transfer the case under § 1404(a) is premised solely on the argument that the Central District of California is more convenient for the parties. *See* Br. Supp. 1st Raymond Mot. Dismiss 13–14, ECF No. 44 (not discussing the convenience of the witnesses or the interests of justice).

A plaintiff's choice of forum "is typically entitled to 'substantial weight,' especially where the chosen forum is the plaintiff's home forum." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (quoting *Koh*, 250 F. Supp. 2d at 633). As a result, "when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988).

Plaintiffs are residents of this District. Many, but not all, Defendants are residents of California. Other Defendants are residents of Delaware, Georgia, New York, and Tennessee, all

of which are closer to this District than they are to the Central District of California.[6] Therefore, this District is more convenient for Plaintiffs, and the Central District of California is more convenient for some, but not all, Defendants.

Even if the Central District of California were more convenient for all Defendants, transfer would be unwarranted. "[T]ransfer is not appropriate where it would likely only serve to shift the balance of inconvenience" from the defendants to the plaintiffs. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007) (alteration provided) (quoting *Sheet Metal Workers Nat'l Fund*, 702 F. Supp. at 1259) (internal quotation marks omitted). Because transfer in this case "would simply shift the balance of inconvenience" from some parties to others, transfer is unwarranted. *Id.*

3. Conclusion

A party seeking to transfer a case under § 1404(a) must "demonstrate that transfer does more than merely 'shift the inconvenience' to the other party." *Id.* at 736. Mr. Raymond has failed to do so here. Therefore, the First Raymond Motion to Dismiss (ECF No. 43) is **DENIED** with respect to Mr. Raymond's request to transfer the case under § 1404(a).

E. CONCLUSION

For the foregoing reasons, the Bieber Motion to Dismiss (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART** and the First Raymond Motion to Dismiss (ECF No. 43) is **DENIED**. The claims against Bieber Time are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

---

[6]   The Court takes judicial notice of the proximity of these states to this District and to the Central District of California. *See United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984) ("[G]eographical information is especially appropriate for judicial notice.").

## II. FAILURE TO STATE A CLAIM

### A. Second Raymond Motion to Dismiss

The Second Raymond Motion to Dismiss argues that Plaintiffs have failed to state a claim for punitive damages. ECF No. 47. Plaintiffs have not responded to this motion.

It is well-settled that "the Copyright Act does not authorize punitive damages." *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 545 (4th Cir. 2007). Therefore, the Second Raymond Motion to Dismiss (ECF No. 47) is **GRANTED**. Plaintiffs' request for punitive damages is **DISMISSED WITH PREJUDICE**.

### B. Island Motion to Dismiss

The Island Motion to Dismiss argues that Plaintiffs have failed to state a claim of copyright infringement. ECF No. 17. Specifically, Defendants assert the following: (1) Defendants' accused songs are not extrinsically similar to Plaintiffs' song; (2) Defendants' accused songs are not intrinsically similar to Plaintiffs' song; and (3) Plaintiffs' claims of contributory and vicarious infringement are inadequately pled.

### 1. Standard of Law

In deciding a motion to dismiss for failure to state a claim, the Court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)) (internal quotation marks omitted). The Court may also consider any documents that are "integral to and explicitly relied on in the complaint," if their authenticity is uncontested. *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because conclusory allegations "necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief,'" a "'formulaic recitation of the elements of a cause of action will not do.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 557).

Plaintiffs allege that Defendants copied certain elements of their work. "Not all copying, however, is copyright infringement." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "To prove copyright infringement, a plaintiff must show first that he owned the copyright to the work that was allegedly copied, and second, that the defendant copied protected elements of the work." *Bouchat v. Balt. Ravens, Inc.*, 241 F.3d 350, 353 (4th Cir. 2001). "Where direct evidence of copying is lacking, [a] plaintiff may prove copying by circumstantial evidence in the form of proof that the alleged infringer had access to the work and that the supposed copy is substantially similar to the author's original work." *Id.* at 353–54.

Defendants do not challenge Plaintiffs' allegations that Plaintiffs possessed a valid copyright to their song and that Defendants had access to this song. Instead, the Island Motion to Dismiss argues that the accused songs are not substantially similar to Plaintiffs' songs.

"Substantial similarity analysis is 'largely a matter of fact' . . . ." *Innovative Legal Mktg., LLC v. Mkt. Masters-Legal*, 852 F. Supp. 2d 688, 702 (E.D. Va. 2012) (quoting *Ganz Bros. Toys v. Midwest Imps. of Cannon Falls, Inc.*, 834 F. Supp. 896, 899–900 (E.D. Va. 1993)); *accord X-*

*IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 614 (E.D. Va. 2001). However, even at the pleadings stage of the case, "this Court has the authority to dismiss [a] copyright infringement claim if no reasonable jury could find substantial similarity." *Tessler v. NBC Universal, Inc.*, No. 2:08cv234, 2009 WL 866834, at *3 (E.D. Va. Mar. 31, 2009) (unpublished) (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002); *Nelson v. PRN Prods.*, 873 F.2d 1141, 1143–44 (8th Cir. 1989); *Christianson v. W. Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945)), *affirmed*, 364 F. App'x 5 (2010).

"Proving substantial similarity requires a two-part analysis." *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996). "First, a plaintiff must show—typically with the aid of expert testimony—that the works in question are extrinsically similar because they contain substantially similar ideas that are subject to copyright protection." *Id.* "Second, a plaintiff must satisfy the subjective, or intrinsic, portion of the test by showing substantial similarity in how those ideas are expressed." *Id.* at 583–84.

In determining extrinsic similarity, "a list comparing 'random similarities scattered throughout the works' is 'inherently subjective and unreliable.'" *Id.* at 584 (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984)). "Instead, a court must analyze both [works] and the record, searching for extrinsic similarities such as those found in" the various aspects of the work. *Id.* (listing, in the context of screenplays, such aspects as "plot, theme, dialogue, mood, setting, pace, [and] sequence").

"Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). However, even

common, unprotected elements can be protected when combined in a unique manner. *Bouchat*, 241 F.3d at 356.

Determining intrinsic similarity requires the Court to "consider[] whether the intended audience could determine that the works are substantially similar, usually without the aid of expert testimony." *Towler*, 76 F.3d at 584; *see also Ganz Bros.*, 834 F. Supp. at 901 (asking whether an observer who has not "'set out to detect the disparities, would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same'" (alteration provided) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2nd Cir. 1960))). In deciding questions of intrinsic similarity as a matter of law, "the infringing [work] must be viewed or juxtaposed against the copyrighted [work] and then an essentially aesthetic judgment must be made as to whether reasonable jurors would not differ in concluding that the overall appearance of the [works] are substantially similar." *Id.* at 899–900.

"In most cases, when a copyrighted work will be directed at the public in general, the court need only" consider whether the general public would find the works to be substantially similar. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001). "However, if the intended audience is more narrow in that it possesses specialized expertise, relevant to the purchasing decision, that lay people would lack, the court's inquiry should focus on whether a member of the intended audience would find the two works to be substantially similar." *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 736 (4th Cir. 1990). "[I]n any given case, a court should be hesitant to find that the lay public does not fairly represent a work's intended audience." *Id.* at 737.

2. Analysis

a. extrinsic similarity

The Complaint lists a number of similarities between the Bieber accused song[7] and Plaintiffs' song. Compl. para. 47, ECF No. 1. The Complaint further asserts that "a statistical analysis of (i) a 52-song sample of 2009[–]2011 Billboard 'Hot 100' Songs, (ii) both versions of 'Somebody to Love,' (iii) [s]ongs with Writing Credits to Justin Bieber *et al.*, and (iv) [s]ongs with Writing Credits to the Stereotypes *et al.* reveal[ed] that" the statistical probability of two songs randomly having the listed similarities is "essentially . . . zero" and that "a statistically negligible" number of songs in the above samples contained those attributes. *Id.* at para. 48.

Plaintiffs have also submitted an expert report stating that it is statistically unlikely that two unrelated songs would contain every element that is shared by the songs at issue in this suit. Defendants argue that this report is inadmissible at this stage of the case, and, additionally, that the report indicates that the similarities between the songs are too broad to be protectable.

The question of whether the accused songs are extrinsically similar to Plaintiffs' song depends on the significance of the alleged similarities. A hearing is necessary to determine whether expert testimony is needed on this issue, and whether the Island Motion to Dismiss should be converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) in order to facilitate the gathering and presentation of relevant testimony.

b. intrinsic similarity

The parties dispute whether the intended audience of Plaintiffs' song is the general public or industry professionals. Mr. Copeland attests that he did not intend to release his recording of Plaintiffs' song to the general public, but instead intended to use it to obtain a recording contract or find a more established artist to record it. Copeland Aff. paras. 4–5, ECF No. 39-1.

---

[7] The Complaint does not discuss any similarities in the Raymond accused song.

Therefore, Plaintiffs argue, the intended audience of Plaintiffs' song consists of members of the music industry, not the general public.

In determining whether the intended audience is the general public, the Court's guiding consideration is "the effect of the defendant's work on the plaintiff's market." *Id.* at 737. In other words, the Court must determine whether any harm caused to Plaintiffs by Defendants' songs came from the general public viewing the songs as similar, or from industry professionals viewing the songs as similar. *See Lyons*, 243 F.3d at 803.

If Plaintiffs are correct in stating that the intended audience consists of industry professionals, expert testimony may assist in determining whether those professionals would consider the songs to be similar. Because complex questions are presented by this issue, a hearing is warranted.

### c. contributory and vicarious infringement

Defendants also argue that Plaintiffs' allegations regarding contributory and vicarious infringement are conclusory. This is a common claim and does not require oral argument. Because it is possible that the resolution of the question of substantial similarity will resolve the claims of contributory and vicarious infringement, whereas resolution of the contributory and vicarious infringement claims cannot obviate the need for a hearing on the issue of substantial similarity, the Court refrains from addressing these claims until the issues of intrinsic and extrinsic similarity are resolved.

### C. CONCLUSION

For the foregoing reasons, oral argument is **ORDERED** on the issue of whether the accused songs are extrinsically or intrinsically similar to Plaintiffs' song. An Order resolving the Island Motion to Dismiss (ECF No. 17) will issue thereafter.

### III. CONCLUSION

Defendants' motions for joinder (ECF Nos. 30, 31, 49, 59, 60, 61) are **GRANTED**.

The Bieber Motion to Dismiss (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART**.

The First Raymond Motion to Dismiss (ECF No. 43) is **DENIED**.

The unopposed Second Raymond Motion to Dismiss (ECF No. 47) is **GRANTED**.

The claims against Bieber Time are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

Plaintiffs' claims for punitive damages are **DISMISSED WITH PREJUDICE**.

The parties are **ORDERED** to confer and then contact the Courtroom Deputy at 757-222-7212 to set a date for the hearing on the Island Motion to Dismiss (ECF No. 17). This hearing shall address the following issues:

- Whether the accused songs are extrinsically similar to Plaintiffs' song.

- Whether the accused songs are intrinsically similar to Plaintiffs' song.

- Whether the Island Motion to Dismiss should be converted into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) in order to facilitate the admission of expert testimony.

The parties are **ADVISED** that this hearing will not address Defendants' challenge to Plaintiffs' claims of contributory and vicarious infringement, because this issue is addressed adequately in the briefs.

**IT IS SO ORDERED.**

December 16, 2013
Norfolk, Virginia

/s/
Arenda L. Wright Allen
United States District Judge
Arenda L. Wright Allen
United States District Judge