UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DEVIN COPELAND, *et al.*,
    Plaintiffs,

v.                                              Civil Action No. 2:13cv246

JUSTIN BIEBER, *et al.*,
    Defendants.

## ORDER

Plaintiffs Devin Copeland and Mareio Overton have brought this copyright infringement suit against the following Defendants: Justin Bieber; Usher Raymond, IV; Heather Bright d/b/a B-RHAKA Publishing; B-RHAKA Publishing ("B-RHAKA"); Ray Romulus d/b/a Please Enjoy the Music; Please Enjoy the Music; Jonathan Yip d/b/a Products of the Street; Products of the Street; Jeremy Rivers d/b/a Sumphu; Sumphu; Universal Music Corp. ("Universal"); Universal Music Publishing Group; Sony/ATV Music Publishing, LLC ("Sony"); WB Music Corp. ("WB"); The Island Def Jam Music Group ("Island"); Stage Three Music (U.S.) Inc.; Stage Three Music, LLC; and Jonetta Patton.

Plaintiffs assert that three versions of the song "Somebody to Love," recorded in 2010 by Mr. Bieber and Mr. Raymond, infringe Plaintiffs' copyright to a similarly-titled song recorded by Mr. Copeland in 2008. Plaintiffs seek actual and profit damages in the amount of $10,000,000, as well as punitive damages.

With Plaintiffs' consent, Defendants were given extensions of time in which to answer the Complaint. Island and Universal then moved to dismiss the Complaint for failure to state a claim upon which relief could be granted. ECF No. 17. This motion asserts that Defendants' accused songs are not extrinsically or intrinsically similar to Plaintiffs' song, and that Plaintiffs'

1

claims of contributory and vicarious infringement are inadequately pled. Ms. Bright, B-RHAKA, Sony, WB, and Mr. Raymond later moved to join in this motion.

On December 17, 2013, the Court issued an Order granting the requests for joinder and ordering a hearing on the issues of extrinsic and intrinsic similarity. This hearing was held on March 7, 2014. Having listened to the songs at issue and heard arguments from counsel, the Court **FINDS** that the songs are not intrinsically similar. The Motion to Dismiss is **GRANTED** and the case is **DISMISSED WITH PREJUDICE**.

## I. FACTUAL BACKGROUND

In deciding a motion to dismiss for failure to state a claim, the Court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)) (internal quotation marks omitted). The Court may also consider any documents that are "integral to and explicitly relied on in the complaint," if their authenticity is uncontested. *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Plaintiffs allege the following facts:

Mr. Copeland, Mr. Raymond, and Mr. Bieber are musical performers and writers in the musical genre referred to as Rhythm and Blues. Compl. paras. 26, 35, 39, ECF No. 1. Mr. Overton is a songwriter. *Id.* at para. 27. Mr. Romulus, Mr. Yip, and Mr. Reeves are songwriters and music producers, and perform as "the Stereotypes." *Id.* at para. 38.

In early 2008, Plaintiffs wrote a song entitled "Somebody to Love" ("Plaintiffs' song"), which Mr. Copeland recorded for his album "My Story II." *Id.* at paras. 28–29. Plaintiffs copyrighted this song on October 2, 2008. *Id.* at para. 30.

In October and November 2009, Plaintiffs met Peter Stockton, Kevin Lawson, and Malik Brooks of Sangreel Media ("Sangreel"). *Id.* at para. 33. Sangreel finds new musical artists for companies, including Island and Sony. *Id.* Sangreel expressed interest in promoting Plaintiffs' songs, and Plaintiffs provided Sangreel with copies of several songs, including "Somebody to Love," for promotional purposes. *Id.* at paras. 33–34. Sangreel provided these copies to other artists, including Mr. Raymond. *Id.* at para. 35.

On January 5, 2009, Mr. Copeland conversed with Mr. Lawson and Ms. Patton. *Id.* at para. 36. Ms. Patton is Mr. Raymond's mother and manager. *Id.* Ms. Patton indicated that she and Mr. Raymond had listened to "My Story II" and were interested in having Mr. Copeland rerecord the album with Mr. Raymond and go on a performance tour with him during the summer of 2009. *Id.* However, neither Ms. Patton nor any other representative of Mr. Raymond contacted Plaintiffs thereafter. *Id.* at para. 37.

Mr. Raymond then wrote a song entitled "Somebody to Love" ("the Raymond accused song"), which he produced with the Stereotypes and Ms. Bright. *Id.* at para. 38. The song was uploaded to the internet on February 28, 2010. *Id.* Plaintiffs assert the Raymond accused song is a direct and deliberate copy of Plaintiffs' song. *Id.*

Mr. Raymond, Mr. Bieber, and the Stereotypes then produced another recording of the Raymond accused song, which was released on Mr. Bieber's album "My World 2.0" in early 2010 ("the Bieber accused song"). *Id.* at paras 41–43.

Plaintiffs allege that Defendants knew that their actions were infringing, and have profited from those actions. *Id.* at paras. 53–55.

The Bieber accused song performed well commercially. *Id.* at para. 44. Mr. Raymond and Mr. Bieber later recorded a remix of this song, which was released on June 25, 2010. *Id.* at

3

para. 45. Mr. Bieber has performed the Bieber accused song on numerous occasions, and continues to perform it as of the date of the Complaint. *Id.* at paras. 49–50.

## II. STANDARDS OF LAW

### A. FAILURE TO STATE A CLAIM

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2013). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Requiring a claim to be plausible "does not impose a probability requirement at the pleading stage." *Id.* at 556. However, it does require more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Because conclusory allegations "necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief,'" a "'formulaic recitation of the elements of a cause of action will not do.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 557).

A 12(b)(6) motion "test[s] the sufficiency of a complaint" and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (alteration provided) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks omitted). As noted, a court should assume the truth of well-pleaded factual allegations. *Iqbal*, 556 U.S. at 679. Although the truth of the facts alleged is assumed, and the facts are taken in the light most

4

favorable to the plaintiff, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) (2013), so as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly* 550 U.S. at 555 (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570 (internal citations and footnote omitted). A complaint may survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted).

B. COPYRIGHT INFRINGEMENT

Plaintiffs allege that Defendants copied certain elements of their work. "Not all copying, however, is copyright infringement." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "To prove copyright infringement, a plaintiff must show first that he owned the copyright to the work that was allegedly copied, and second, that the defendant copied protected elements of the work." *Bouchat v. Balt. Ravens, Inc.*, 241 F.3d 350, 353 (4th Cir. 2001). "Where direct evidence of copying is lacking, [a] plaintiff may prove copying by circumstantial evidence in the form of proof that the alleged infringer had access to the work and that the supposed copy is substantially similar to the author's original work." *Id.* at 353–54.

5

Defendants do not challenge Plaintiffs' allegations that Plaintiffs possessed a valid copyright to their song and that Defendants had access to this song. Instead, the Motion to Dismiss argues that the accused songs are not substantially similar to Plaintiffs' song.

"Substantial similarity analysis is 'largely a matter of fact' . . . ." *Innovative Legal Mktg., LLC v. Mkt. Masters-Legal*, 852 F. Supp. 2d 688, 702 (E.D. Va. 2012) (quoting *Ganz Bros. Toys v. Midwest Imps. of Cannon Falls, Inc.*, 834 F. Supp. 896, 899–900 (E.D. Va. 1993)); *accord X-IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 614 (E.D. Va. 2001). However, even at the pleadings stage of the case, "this Court has the authority to dismiss [a] copyright infringement claim if no reasonable jury could find substantial similarity." *Tessler v. NBC Universal, Inc.*, No. 2:08cv234, 2009 WL 866834, at *3 (E.D. Va. Mar. 31, 2009) (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002); *Nelson v. PRN Prods.*, 873 F.2d 1141, 1143–44 (8th Cir. 1989); *Christianson v. W. Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945)), *affirmed*, 364 F. App'x 5 (2010).

"Proving substantial similarity requires a two-part analysis." *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996). "First, a plaintiff must show—typically with the aid of expert testimony—that the works in question are extrinsically similar because they contain substantially similar ideas that are subject to copyright protection." *Id.* "Second, a plaintiff must satisfy the subjective, or intrinsic, portion of the test by showing substantial similarity in how those ideas are expressed." *Id.* at 583–84.

Determining intrinsic similarity requires the Court to "consider[] whether the intended audience could determine that the works are substantially similar, usually without the aid of expert testimony." *Id.* at 584; *see also Ganz Bros.*, 834 F. Supp. at 901 (asking whether an observer who has not "'set out to detect the disparities, would be disposed to overlook them, and

regard [the works'] aesthetic appeal as the same'" (alteration provided) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2nd Cir. 1960))). In deciding questions of intrinsic similarity as a matter of law, "the infringing [work] must be viewed or juxtaposed against the copyrighted [work] and then an essentially aesthetic judgment must be made as to whether reasonable jurors would not differ in concluding that the overall appearance of the [works] are substantially similar." *Ganz Bros.*, 834 F. Supp. at 899–900.

"In most cases, when a copyrighted work will be directed at the public in general, the court need only" consider whether the general public would find the works to be substantially similar. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001). "However, if the intended audience is more narrow in that it possesses specialized expertise, relevant to the purchasing decision, that lay people would lack, the court's inquiry should focus on whether a member of the intended audience would find the two works to be substantially similar." *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 736 (4th Cir. 1990). "[I]n any given case, a court should be hesitant to find that the lay public does not fairly represent a work's intended audience." *Id.* at 737.

### III. ANALYSIS

#### A. EVIDENCE PRESENTED

Plaintiffs attached certain evidentiary documents to their response to the Motion to Dismiss. ECF Nos. 39-1, 39-2, 39-3. Such evidence is not permitted when considering a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

The evidence attached to Plaintiffs' response brief, and any other evidence submitted in connection with this motion, except the copies of the songs at issue, is **EXCLUDED**. This prohibition is inapplicable to the copies of Plaintiffs' song and the accused songs because those

songs are "integral to and explicitly relied on in the [C]omplaint" and their authenticity is uncontested. *Phillips*, 190 F.3d at 618.

B. INTRINSIC SIMILARITY

The Court first considers whether the accused songs are intrinsically similar to Plaintiffs' song. Works are intrinsically similar if "the intended audience could determine that the works are substantially similar." *Towler*, 76 F.3d at 584.

1. Intended Audience

Defendants argue that the intended audience of the works in this case is the general public. Plaintiffs argue that because Mr. Copeland intended to market his song to industry professionals, the intended audience of Plaintiffs' song consists of those professionals, not the general public. *See generally Dawson*, 905 F.2d at 737–38 (holding that the general public was not the intended audience of choral arrangements because those arrangements were marketed to choir directors, each of whom would likely perform the arrangement differently).

In determining whether the intended audience is the general public, the Court's guiding consideration is "the effect of the defendant's work on the plaintiff's market." *Id.* at 737. The Court must determine whether any harm caused to Plaintiffs by Defendants' songs came from the general public construing the songs as similar, or from industry professionals construing the songs as similar. *See Lyons*, 243 F.3d at 803.

The Fourth Circuit's analysis in *Lyons* is instructive. In that case, the defendants released a costume that resembled a character copyrighted by the plaintiffs who was popular among children. *Id.* at 795–96. Although the costume was designed to entertain children, the district court reasoned that the intended audience consisted of adults who would purchase the costume for the children's benefit. *Id.* at 802. The district court distinguished this case from infringement

8

involving other children's products because children generally would not be present when the costume was purchased or rented. *Id.* at 803. The Fourth Circuit rejected this reasoning, holding that because the infringing product could erode children's positive perception of the plaintiffs' character, the economic harm to plaintiffs came from confusion among children, not among adults. *Id.*

Plaintiffs' argument has the same flaws as the district court's reasoning in *Lyons*. If, as Plaintiffs fear, industry professionals reject Plaintiffs' song because it is too similar to the Defendants' songs, it would be because those companies fear that the *public* will find the songs to be overly similar. *See* Resp. Mot. Dismiss 10, ECF No. 39 ("Industry professionals need to be concerned about marketability and avoiding competition in the marketplace for music."). Just as the harm caused to the plaintiffs in *Lyons* came from confusion among children rather than confusion among the adults purchasing the accused product, any harm caused by confusion between Plaintiffs' song and Defendants' songs would come from confusion among the public, not among industry professionals.

Plaintiffs' reliance on *Dawson* is misplaced. *Dawson* expressly distinguished cases involving "popular recordings." 905 F.2d at 737–38. The court noted that spiritual arrangements, unlike popular recordings, are sometimes purchased based on considerations other than their general appeal, and may be altered by each individual purchaser. *Id.* These alterations preclude the seller from presenting a single recording of the arrangement as a typical version that is enjoyed by the general public. *Id.* at 738.

Such concerns are absent in this case. Plaintiffs concede that industry professionals, unlike the choral directors in *Dawson*, make their purchasing decisions based on a song's expected appeal to the general public. Resp. Mot. Dismiss 10, ECF No. 39. To the extent to

9

which Plaintiffs argue that the released version of their song would feature a different vocalist, this change would not introduce significant differences from Plaintiffs' original work. *Cf. Dawson*, 905 F.2d at 738 (stating that in that case, the changes made by the choral directors were of such significance that "differences and similarities in the sound of performances of two arrangements may represent something other than differences and similarities in the arrangements themselves"). *Dawson* is inapplicable.

Although the immediate purchasers of Plaintiffs' song may be industry professionals, their purchasing decisions are based on the song's expected appeal to consumers, and any harm caused to Plaintiffs by the accused songs would be caused by the public construing Plaintiffs' song as similar to the accused songs. Therefore, the Court finds the "intended audience" for purposes of determining intrinsic similarity is the general public.

2. Similarity

The Court must grant the motion to dismiss if the songs are so dissimilar that no reasonable juror could believe that a member of the public would overlook the differences between the songs and construe their aesthetic appeal as being similar. *Ganz Bros.*, 834 F. Supp. at 901.

Having examined Plaintiffs' song and the three accused songs, the Court finds that the songs cannot be reasonably construed as being substantially similar. Although the accused songs have some elements in common with Plaintiffs' song, their mood, tone, and subject matter differ significantly. This is not a case where a listener who had not "set out to detect the disparities[] would be disposed to overlook them, and regard [the songs'] aesthetic appeal as the same." *Id.* (alterations provided) (quoting *Peter Pan Fabrics*, 274 F.2d at 489) (internal quotation marks omitted). Instead, any listener who had not set out to detect the songs' *similarities* would be

inclined to overlook them, and regard the songs' aesthetic appeal as different. Therefore, a reasonable juror could not conclude that a member of the public would construe the aesthetic appeal of the songs as being similar.

Because the accused songs could not be found to be intrinsically similar to Plaintiffs' song, the Motion to Dismiss is **GRANTED**.

C. OTHER ISSUES

The Motion to Dismiss also argues that the disputed songs are not extrinsically similar and that the Complaint alleges insufficient facts to state claims of contributory and vicarious infringement. As discussed above, the accused songs are noninfringing because they are not intrinsically similar to Plaintiffs' song. Because the accused songs do not infringe Plaintiffs' copyright, Plaintiffs cannot state claims of contributory or vicarious infringement based on those songs. Therefore, the Court does not reach the extrinsic similarity of the songs or the adequacy of Plaintiffs' allegations regarding contributory and vicarious infringement.

IV. CONCLUSION

The evidence attached to Plaintiffs' response brief, and any other evidence submitted in connection with this motion, except the copies of Plaintiffs' song and the accused songs, is **EXCLUDED**. Defendants' Motion to Dismiss (ECF No. 17) is **GRANTED**. The case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Arenda L. Wright Allen
United States District Judge

March 28, 2014
Norfolk, Virginia