**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| DEVIN COPELAND p/k/a DE RICO and MAREIO OVERTON,<br><br>    Plaintiffs,<br><br>v.<br><br>JUSTIN BIEBER, USHER RAYMOND IV p/k/a "USHER," HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, UNIVERSAL MUSIC CORP., SONY/ATV MUSIC PUBLISHING LLC, BIEBER TIME PUBLISHING, LLC, WB MUSIC CORP., and DEF JAM RECORDINGS, A DIVISION OF UMG RECORDINGS, INC. (FORMERLY KNOWN AS "THE ISLAND DEF JAM MUSIC GROUP")<br><br>    Defendants. | **Civil Action No. 2:13-cv-246 (AWA-DEM)** |

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE
TESTIMONY INCONSISTENT WITH FINDINGS OF THE COURT OF APPEAL**

  Defendants Justin Bieber, Usher Raymond IV, Heather Bright, Individually and d/b/a B-Rhaka Publishing, Universal Music Corp., Sony/ATV Music Publishing LLC, WB Music Corp., and Def Jam Recordings (collectively, "Defendants"), by and through their undersigned attorneys, respectfully submit this memorandum of law in opposition to Plaintiffs' Motion In Limine To Exclude Expert Testimony Inconsistent With Findings Of The Court Of Appeal ("Motion" or "Mot.").

**PRELIMINARY STATEMENT**

Plaintiff's Motion is plainly premised on *obiter dicta* from *Copeland v. Bieber*, 789 F.3d 484 (4th Cir. 2015) ("*Copeland*") concerning mere observations about the songs at issue that are not binding on anyone under the "law of the case" doctrine or the "mandate rule."[1]

What Plaintiffs' Motion seeks to aggressively repackage are not factual findings or decisions of law, but the *hypothetical* basis that could lead a reasonable jury to find that the Songs at issue are substantially similar under the "intrinsic" test. In *Copeland*, the Fourth Circuit remanded the case to preserve the issue of intrinsic similarity for the jury to decide, and not to be decided by the panel. The Court could not have been any clearer in its opinion, yet Plaintiffs inexplicably ignore it.

Plaintiff has likely resorted to this tactic because the deposition testimony from *both* parties' proffered music experts demonstrates that the choruses in the Songs – the only portions alleged to be similar – are actually completely *dissimilar*. Because this testimony is fatal to Plaintiffs' copyright infringement claims, Plaintiffs misguidedly argue for the Court to find that Plaintiffs are excused from demonstrating substantial similarity because that issue was already decided in their favor by the Fourth Circuit. Plaintiffs Motion is entirely without merit.

Throughout *Copeland*, the Fourth Circuit stated it was *not* making a definitive finding that the Songs are substantially or strikingly similar, whether under the intrinsic or extrinsic test. Instead, the Fourth Circuit held only "that a reasonable jury *could* find that the [the Songs] are intrinsically similar." *Copeland*, 789 F.3d at 495 (emphasis added). Although Plaintiffs admit in their Motion that the Fourth Circuit held that intrinsic similarity "is a close enough question that *it cannot be disposed*

---

[1] The songs at issue are hereinafter respectively referred to as "Plaintiffs' Song" and "Defendants' Song" or, collectively, as the "Songs." The definition of Defendants' Song includes the following: *Somebody To Love* recorded by Bieber, which is embodied on his album *My World 2.0*; *Somebody To Love Remix* recorded by Bieber, featuring Usher, which is embodied on Bieber's album *Never Say Never – The Remixes*; and *Somebody To Love (Remix)* recorded by Usher and featuring Bieber, which is embodied on Usher's albums *Raymond v. Raymond (Deluxe Edition)* and *Versus*.

*of as a matter of law and should be instead be decided by a jury*" *id.* (emphasis added) (quoted at Motion p. 2), Plaintiffs seeks an order that contravenes the Fourth Circuit's mandate leaving the determination of substantial similarity under the *intrinsic* test for a jury.[2] Plaintiffs' Motion must be denied.

## FACTUAL BACKGROUND

### I. This Court Granted Defendants' Motion To Dismiss

Defendants initially moved to dismiss Plaintiffs' copyright claims on the basis that Plaintiffs' and Defendants' Songs are not substantially similar as a matter of law. *See* Dkt. No. 17. The determination of substantial similarity under Fourth Circuit precedent is divided into two tests – the extrinsic test and the intrinsic test. *Copeland*, 789 F.3d at 489. This Court granted Defendants' motion to dismiss, finding "that no reasonably jury could find the songs substantially similar *under the intrinsic prong*" *id.* at 488 (emphasis added). But the Fourth Circuit reversed, remanding the case because it believed a reasonable jury could find the Songs to be intrinsically similar under the intrinsic test.

### II. Plaintiffs Misrepresent *Copeland's* Holding In Their Motion

Plaintiffs' Motion quotes – out of context – two snippets from the *Copeland* decision to argue that the Fourth Circuit found the Songs' choruses had "'identical rhythms'" and "'striking similar melod[ies].'" Mot. at 3, quoting *Copeland*, 789 F.3d at 494. But Plaintiffs inaccurately contend the Fourth Circuit made objective findings about the rhythms and melodies in the Songs' choruses, which bound the trier of fact. *See* Mot. at 3. The Court made no such findings. In the

---

[2] As discussed in Defendants' summary judgment papers (Dkt. Nos. 128, 147), the *Copeland* decision does not preclude Defendants from seeking summary judgment on the basis that Plaintiffs have no evidence of access, nor does it preclude it on the basis that the Songs are not *extrinsically* similar.

paragraph selectively quoted by the Motion, the Fourth Circuit *actually* explained how a hypothetical jury could analyze the Songs:

> And when we listen to the choruses that way, and in the context of the entire songs, we hear the kind of meaningful overlap on which *a reasonable jury could* rest a finding of substantial similarity. It is not simply that both choruses contain the lyric 'somebody to love'; it is that the lyric is delivered *in what seems to be* an almost identical rhythm and a strikingly similar melody. To us, it sounds as though there are a couple of points in the respective chorus melodies where [Defendants' Song] go[es] up a note and [Plaintiffs' Song] goes down a note, or vice versa. In our view, however, *a reasonable jury could find* that these small variations would not prevent a member of the general public from hearing substantial similarity.

*Id.* at 494 (all emphasis added).

Thus, the Fourth Circuit did not hold that the rhythms and melodies in the Songs are strikingly similar. All that the Fourth Circuit stated was that, in its view, the lyrics "somebody to love" "seems to be" delivered in a similar way in both Songs. Twice in the paragraph above, the Fourth Circuit carefully stated that it was finding only that there was sufficient evidence on which a reasonable jury *could* find intrinsic similarity. *See id*. Moreover, this same sentiment is repeated throughout the *Copeland* decision. *See id.* at 494 (stating "*a reasonable jury could find the songs intrinsically similar*"); *id.* at 495 (holding "*a reasonable jury could find* that the [Songs] are intrinsically similar").

In further eliminating any doubt about its intentions, the Fourth Circuit expressly stated that it was *not* deciding intrinsic similarity as *a matter of law* and held that this issue had be decided by a jury:

> Whether a member of the general public *could* experience these songs primarily through their choruses and thus find them substantially similar, *notwithstanding the differences catalogued above*, is in our view a close enough question that *it cannot be disposed of as a matter of law* and should *instead be decided by a jury*.

*Id.* at 495 (emphasis added).

4

## ARGUMENT

Because intrinsic similarity cannot be decided as a matter of law and must be decided by a jury in this case, the Fourth Circuit implicitly recognized that a jury *could* find that the Songs are *not* intrinsically similar. Nevertheless, Plaintiffs argue in their Motion that the Fourth Circuit's statement that the choruses "seem[ed] to be" similar with regard to their rhythm and melody is binding on the jury as "law of the case." In other words, contrary to the explicit ruling of the Court, Plaintiff contends that a jury is not allowed to listen to the Songs and make up its own mind as to whether the melodies sound similar.

Even further, Plaintiffs incorrectly argue that *Copeland* precludes Defendants from introducing evidence from their heralded musicologist, Dr. Lawrence Ferrara, as well as Plaintiffs' own proffered recording engineer, Paul Arnold, which shows that *objectively*, the melodies in the Songs' choruses are not actually similar at all because, among other things, they do not share even one common note.[3] *See* Mot. 2-4. Plaintiffs not only misstate the *Copeland* decision, but they also misstate the law of the case doctrine. The Motion cannot succeed.

**I.  The Fourth Circuit's Statements Explaining Its Holding Are Not Law Of The Case**

The "law of the case" doctrine provides that decisions "upon a rule of law … should continue to govern the same issues in subsequent stages in the same case." *U.S. v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999), quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988).

For the doctrine to apply, there must be a decision "upon a rule of law." *Id.* The law of the case doctrine applies to "legal issues" that are decided by a court of appeal. *Jackson v. State of*

---

[3] Despite agreeing that the Songs' melodies are not *objectively* similar, Arnold never opined on the extrinsic test because his opinion was based on, as he testified, "listening" to the Songs rather than an objective, analytical analysis, and whether the ordinary listener would hear substantial similarity between them. Dkt. No. 129-17 at 37:7-11; 42:15-17 (Arnold "consider[ed] the issue from the perspective of the ordinary listener"); 41:3-5 (Arnold's "method" was "listening the way that the . . . average person would make a determination.").

5

*Alabama State Tenure Com'n,* 405 F.3d 1276, 1283 (11th Cir.2005); *see generally Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 533 (7th Cir. 1982) (noting that "observations, commentary, or mere dicta touching upon issues not formally before the Court do not constitute binding determinations" under law of the case); *Major v. CSX Transp.*, 278 F. Supp. 2d 597, 616 (D. Md. 2003) (same).

The Fourth Circuit's statement in *Copeland* concerning seeming similarities between the choruses of the Songs was not a decision "upon a rule of law" binding the trier of fact. For that statement to be a binding decision upon a "rule of law," the Fourth Circuit would have needed to find – which it did not find – that the Songs are intrinsically similar *as a matter of law*. The Fourth Circuit repeatedly stated it was concluding *only* that a reasonable jury *could* find the Songs to be intrinsically similar, explicitly recognizing that such similarity "*cannot* be disposed of as a matter of law." *Copeland*, 789 F.3d at 495.

The Fourth Circuit described the similarities it perceived, not to make a binding factual finding, but to explain why a reasonable jury might find the Songs intrinsically similar. The Court's reasoning was straight-forward: if the Songs sound similar to us, then they might also sound similar to a reasonable jury.

Nowhere in the *Copeland* decision did the Fourth Circuit hold that, because it perceived similarities in the rhythm and melodies of the Songs' choruses, then a jury *must* do so as well. Instead, the Fourth Circuit acknowledged that there are differences in the melodies, concluding that intrinsic similarity is "a close enough question that it cannot be disposed of as a matter of law."[4] *See id.* at 494 ("To us, it sounds as though there are a couple of points in the respective chorus melodies

---

[4] As discussed in Defendants' summary judgment papers and further below, the Fourth Circuit heard similarities in the melodies that are not evidenced by the transcriptions and testimony provided from the parties' proffered music experts, which establish the Songs' melodies are utterly *dissimilar*.

where [Defendants' Song] go[es] up a note and [Plaintiffs' Song] goes down a note, or vice versa."); *id*. at 495.

Had the Fourth Circuit made a conclusive finding that constituted law of the case, it would have said so, including by: (1) stating that the rhythms and melodies were substantially similar "as a matter of law," (2) granting partial summary judgment in Plaintiffs' favor on that basis, and then (3) remanding the case with instructions to this Court consistent with that finding. The Fourth Circuit did none of those things. Its mandate provides for those issues to "instead be decided by a jury." *Id.* at 495.

Plaintiffs' law of the case argument, if accepted, is illogical and would have untenable and unworkable consequences. If the Motion is correct, then the intrinsic test would be eliminated from this case entirely, as the Fourth Circuit made observations about perceived similarities and dissimilarities. It noted, among other things, differences between the mood and feel of the Songs ("R & B" versus "electronica"), stating: "[T]hat difference is striking upon first listen, and at least as a linguistic matter, the very fact of these different genres might be thought to make the songs different in 'concept and feel' . . . ." *Copeland*, 789 F.3d at 492, 493. Thus, under Plaintiffs' mistaken view of the law of the case doctrine, those observations – both as to similarities and dissimilarities – would bind the trier of fact. If that were the case, then the Fourth Circuit would not have remanded the case for the jury to decide the issue of substantial similarity.

Furthermore, when an appellate court reviews a dismissal or summary judgment order for lack of substantial similarity, it engages in a *de novo* review of the alleged similarities between the copyrighted and accused works to determine whether a reasonable jury could find substantial similarity. In doing so, courts frequently identify the elements of the works that appear similar or

dissimilar. By Plaintiffs' flawed logic, all such statements would bind the trial court and jury – turning the appellate court into an unwitting trier of fact.

None of what Plaintiffs argue is what the Fourth Circuit stated or even intended, and it distorts the law of the case doctrine. The Fourth Circuit offered its own observations about the Songs to explain why it believed a reasonably jury might *or might not* find the Songs intrinsically similar. *Copeland* expressly leaves the final determination to the jury. The law of the case doctrine does not apply here.

### III.    The Mandate Rule Does Not Dictate A Finding That The Songs Are Similar

For the reasons discussed above, the mandate rule is inapplicable here. That rule applies only where a specific mandate issues from the circuit court with the purpose of preventing the lower court from "consider[ing] questions that the mandate has laid to rest." *See Invention Submission Corp. v. Dudas*, 413 F.3d 411, 415 (4th Cir. 2005).

In this case, the only issue the Fourth Circuit "laid to rest" was that intrinsic similarity cannot be decided in *either* party's favor as a matter of law. Nowhere in the *Copeland* decision did the Fourth Circuit mandate a finding that the choruses in the Songs have similar rhythms and melodies. Rather, the Fourth Circuit noted some of the *differences* in the melodies before concluding that these issues cannot be decided as a matter of law and must be left to the jury.

The only mandate here is that *the jury* must listen to the Songs and determine whether the rhythms, melodies, and other elements sound similar. *See Copeland*, 789 F.3d at 495.[5]

---

[5] Even if the mandate rule applies here, which it does not, then the exception to that rule applies for new evidence. *See Invention Submission*, 413 F.3d at 415 (holding that courts can deviate from the mandate rule where "significant new evidence … has come to light"). Defendants' expert musicologist demonstrates by the transcriptions of the Songs' melodies that they are nothing alike. *See* Dkt. No. 128, 14-27; Dkt. No. 131—1. Plaintiffs' proffered expert has likewise shown by his transcriptions and deposition testimony that the melodies are dissimilar. Dkt. No. 128, 21-22 (citing Dkt. No. 129-17 at 194:3-21). Accordingly, even if *Copeland* mandated a finding that the Songs'

### IV. *Copeland* **Provides No Basis To Exclude Dr. Ferrara's Opinion, Or Any Other Evidence Or Argument Regarding Substantial Similarity Under The Extrinsic Test**

The Motion requests that the Court exclude testimony from Defendants' musicologist, because "Plaintiffs believe that he intends to provide testimony … that there are no similarities in the rhythm or melodies of any component of the works, including the choruses." . Mot. at 4. This request is baseless.

Not only are the Court's statements concerning perceived similarities and differences in the Songs not law of the case, but regardless, the Fourth Circuit's analysis concerned only the intrinsic test while Dr. Ferrara's opinion concerns the extrinsic test. *See Copeland*, 789 F.3d at 495 (holding "[i]n summary" that a reasonable jury could find the Songs "intrinsically similar"). The Court did not address the *extrinsic* test under which Plaintiffs must show through "analytic dissection" that the protected elements of the Songs are objectively substantially similar. *See id.* at 494 (noting that the Fourth Circuit applied the "intrinsic prong" rather than the "extrinsic prong").

As revealed by Dr. Ferrara's report (Dkt. No. 131-1 (the "Ferrara Report")), it is the extrinsic test that is the subject of Dr. Ferrara's opinion testimony. He analytically dissected protected and unprotected elements of the Songs, and then he *objectively* analyzed the protected elements by, among other things, comparing their chord progressions, transcribing and comparing their melodies, and analyzing the melodic rhythms in the context of prior art songs. *See* Dkt. No. 131-1; Dkt. No. 128, 14-27. Just as the extrinsic test contemplates, the Ferrara Report and Dr. Ferrara's opinion testimony demonstrate that regardless of what the Court of Appeals *subjectively* perceived by listening to the Songs, and regardless of what a jury might *subjectively* perceive by doing the same, the parties' Songs are not *objectively* similar. *See id.*

---

melodies are similar, the mandate would give way to the new evidence that the melodies are dissimilar.

The Fourth Circuit's statements regarding how the Songs sound under the *intrinsic* test have no bearing on the admissibility or *bona fides* of Dr. Ferrara's testimony regarding an objective comparison of the Songs' elements under the *extrinsic* test. Indeed, the Fourth Circuit's use of separate intrinsic and extrinsic tests contemplates that different results might obtain under them. Plaintiffs cannot and do not cite to any legal authority to support their assertion that the Fourth Circuit's subjective perception of similarities in the Songs' melodies under the intrinsic test can preclude Defendants from presenting evidence from an expert musicologist like Dr. Ferrara, who objectively analyzed the protected elements of the Songs under the extrinsic test.

In sum, no finding of *intrinsic* similarity made by this Court, by the Fourth Circuit, or by the jury could ever preclude Defendants from presenting evidence demonstrating the lack of objective similarity under the extrinsic test. To do otherwise would dispense with the extrinsic test altogether. Plaintiffs' request to preclude Dr. Ferrara's opinion testimony should be rejected.[6]

## V. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny the Motion.

---

[6] Any suggestion by Plaintiffs that the Fourth Circuit conducted the extrinsic test and found the Songs substantially similar is baseless. The Fourth Circuit clearly indicated that it utilized the methodology of the "intrinsic prong" rather than the "extrinsic prong." *Copeland*, 789 F.3d at 494. Moreover, absent from *Copeland* is the type of objective analysis that the extrinsic test calls for, including transcriptions of the Songs and objective comparison of the notes and scale degrees in the melodies. Rather, consistent with the intrinsic test, the Fourth Circuit merely listened to the Songs – with untrained ears as lay listeners – observing that the Songs "seem[ed] to be" similar.

Dated: June 29, 2016

    Respectfully submitted,

    <u>*/s/ Stephen E. Noona*</u>
    Stephen E. Noona
    Virginia State Bar No. 25367
    Kaufman & Canoles, P.C.
    150 W. Main Street, Suite 2100
    Norfolk, VA  23510
    Telephone:  757-624-3239
    Facsimile:  888-360-9092
    senoona@kaufcan.com

    Howard Weitzman (*pro hac vice*)
    Jeremiah T. Reynolds (*pro hac vice*)
    Gregory P. Korn (*pro hac vice*)
    Kinsella Weitzman Iser Kump & Aldisert
    808 Wilshire Blvd., 3rd Floor
    Santa Monica, CA  90401
    Telephone:  310-566-9800
    Facsimile:  310-566-9884
    hweitzman@kwikalaw.com
    jreynolds@kwikalaw.com
    gkorn@kwikalaw.com

    *Attorneys for Defendants Justin Bieber, Universal Music Corp., Bieber Time Publishing, LLC and The Island Def Jam Music Group*

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3239
Facsimile: 888-360-9092
senoona@kaufcan.com

Jonathan D. Davis, Esq. *(pro hac vice)*
Jonathan D. Davis, P.C.
10 Rockefeller Plaza, Suite 1015
New York, NY 10020
Telephone: 212-687-5464
Facsimile: 212-697-2521
jdd@jddavispc.com

*Attorneys for Defendant*
*Usher Raymond IV*

*/s/ Nathan Muyskens*
Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC 20001
Telephone: 202-618-5000
Facsimile: 202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
Telephone: 212-407-4000
Facsimile: 212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Heather Bright, B-RHAKA*
*Publishing LLC, WB Music Corp. and*
*Sony/ATV Music Publishing LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2016, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Duncan G. Byers
Virginia State Bar No. 48146
PENDER & COWARD, P.C.
222 Central park Ave., Suite 400
Virginia Beach, VA  23462
Telephone:  757-502-7396
Facsimile:  757-502-7392
dbyers@pendercoward.com

*Attorneys for Plaintiffs Devin Copeland and Mareio Overton*

Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  757-624-3239
Facsimile:  888-360-9092
senoona@kaufcan.com

Jonathan D. Davis, Esq. *(pro hac vice)*
JONATHAN D. DAVIS, P.C.
10 Rockefeller Plaza, Suite 1015
New York, NY  10020
Telephone:  212-687-5464
Facsimile:  212-697-2521
jdd@jddavispc.com

*Attorneys for Defendant Usher Raymond, IV, p/k/a Usher*

Nathan Muyskens
Virginia State Bar No. 39168
LOEB & LOEB LLP
901 New York Avenue NW
Suite 300 East
Washington, DC  20001
Telephone:  202-618-5000
Facsimile:  202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Telephone: 212-407-4000
Facsimile: 212-407-4990
bslotnick@loeb.com
lchen@loeb.com

*Attorneys for Heather Bright, B-RHAKA Publishing LLC, WB Music Corp. and Sony/ATV Music Publishing LLC*

*/s/ Stephen E. Noona*

Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3239
Facsimile: 888-360-9092
senoona@kaufcan.com